UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANUEL DE LA CRUZ a/k/a EMANUEL
DELACRUZ a/k/a MANUEL DELACRUZ
a/k/a MANNY DELACRUZ and all other
persons similarly situated,

     Plaintiffs,

    v.

NEW YOU BARIATRIC GROUP, LLC,
and LONG ISLAND MINIMALLY
INVASIVE SURGERY, P.C.,

     Defendants.

Case No.: 1:23-cv-06405-PAE-KHP

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND IN SUPPORT OF
<u>PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**


**GOTTLIEB & ASSOCIATES PLLC**
Jeffrey M. Gottlieb, Esq.
Dana L. Gottlieb, Esq.
Michael A. LaBollita, Esq.
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
Jeffrey@Gottlieb.legal
Dana@Gottlieb.legal
Michael@Gottlieb.legal

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

I.      INTRODUCTION………………………………………………………….…....1

II.     PROCEDURAL HISTORY…………………………………………………..…..2

III.    FACTUAL BACKGROUND……………………………………………….....…3

      A.  THE PLAINTIFF IS BLIND.…………………………………………….....3
      B.  DEFENDANTS' WEBSITE IS NON-ADA COMPLIANT. ……………………4
      C.  DEFENDANTS SELL THEIR PRODUCTS TO ALL CONSUMERS WITHOUT
LIMITATION AND THE WEBSITE IS INTERACTIVE…………………………………6

IV.     PLAINTIFF HAS EVIDENCED AN INTENT TO RETURN TO THE WEBSITE…..…6

V.      BOTH DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE…………..…..8

VI.     THE ADA APPLIES TO WEBSITES…………………………………….…..…8

VII.    LEGAL STANDARD, FRCP 12(B)(1) AND 12(B)(6)......................................9

      A.  PLAINTIFF HAS PRODUCED CONCRETE SUFFICIENT FACTS TO
DEFEAT THE MOTIONS TO DISMISS……………………………………….....9
      B.  PLAINTIFF IS NOT A "TESTER" AND HAS SUFFERED AN INJURY AND
HAS STANDING………………………………………………………………10

VIII.   THE NAMES USED BY THE PLAINTIFF WITH THREE DIFFERENT SPELLINGS
ARE ALL HIS "LEGAL NAME"........................................................................15

IX.     LEGAL STANDARD FOR SUMMARY JUDGMENT…………………………...18

X.      PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT …………….......19

XI.     PLAINTIFF HAS SUFFICIENTLY ALLEGED VIABLE CAUSES OF ACTION
PURSUANT TO NYS & NYC STATUTES……………………………………………20

XII.    CONCLUSION……………………………………………………………21

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................... 11, 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................11, 12

*Camacho v. Vanderbilt Univ.,* No. 18-CV-10694, 2019 WL 6528974 (S.D.N.Y. Dec. 4, 2019)..15

*Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.,* 128 F.4th 112, 120 (2d Cir. 2025) ...........4

*Chalas v. Pork King Good,* 673 F. Supp. 3d 339 (S.D.N.Y. 2023) ........................................11, 14

*Davis v. Wild Friends Foods, Inc.,* No. 22-CV-04244, 2023 WL 4364465 (S.D.N.Y. July 5, 2023) ........................................................................................................................9, 11, 12, 15

*Del-Orden v. Bonobos,* No. 17-cv-2744 (PAE) (S.D.N.Y.) ............................................................ 6

*Doe v. Bell,* 194 Misc.2d 774, 754 N.Y.S.2d 846 (Sup. Ct. N.Y. Cnty. 2003)........................... 20

*Feliz v. IHealth Labs Inc., No. 23-cv-00354 (JLR),* 2024 WL 342701 (S.D.N.Y. Jan. 30, 2024) ...............................................................................................................................................11

*Fernandez v. Vanilla Chip,* 1:24-cv-5639 (JLR) (S.D.N.Y. Apr. 18, 2025)................................11

*Frawley v. Med. Mgmt. Grp. of N.Y.,* No. 21-cv-8894, 2022 U.S. Dist. LEXIS 75235 (S.D.N.Y. Apr. 25, 2022) ........................................ ……………………………………………7, 20, 21

*Feng Xue and Calculus Trading Technology, LLC v. Koenig,* No. 19-cv-07630 (NSR)(AEK), 2025 WL [pin] (S.D.N.Y. Mar. 31, 2025) .............................................................................19

*Guglielmo v. Nebraska Furniture Mart, Inc.,* No. 19-CV-11197 (KPF), 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020) ...........................................................................................................8

*Guerrero v. Ogawa USA Inc.,* No. 22-CV-2583 (LGS), 2023 WL 4187561 (S.D.N.Y. June 26, 2023) ..........................................................................................................................................9

*Harty v. Greenwich Hosp. Grp., LLC,* 536 F. App'x 154 (2d Cir. 2013) ...................................8

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ..................................................... 13, 14

*Laufer v. Acheson Hotels, LLC,* No. 21-1410 (1st Cir. Oct. 5, 2022) ........................................13

*Laufer v. Naranda Hotels, LLC,* No. 20-2348, -- F.4th --, 2023 WL 2000998 (4th Cir. Feb. 15, 2023) ........................................................................................................................................14

*Loadholt v. Dungarees, Inc.,* No. 22-CV-4699, 2023 WL 2024792 (S.D.N.Y. Feb. 15, 2023).....8

*Loadholt v. Shirtspace,* No. 22-cv-2870 (ALC) (S.D.N.Y. Mar. 6, 2023) ..................................14

*Lopez v. Sromovsky,* No. 17-2183 (E.D. Pa.) ..............................................................................17

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ..................................................................13

*Matzura v. Red Lobster Hosp. LLC,* 2020 WL 3640075 (S.D.N.Y. July 6, 2020) ......................13

*Maddy v. Life Time,* 22-cv-5007 (LJL) (DKT. 22)......................................................................13

*Mihalik v. Credit Agricole Cheuvreux N. Am. Inc.,* 715 F.3d 102 (2d Cir. 2013) .......................20

*Molski v. M.J. Cable, Inc.,* 481 F.3d 724 (9th Cir. 2007) ............................................................ 7

*Pallozzi v. Allstate Life Ins. Co.,* 198 F.3d 28 (2d Cir. 1999) ....................................................7, 10

*PGA Tour, Inc. v. Martin,* 532 U.S. 661 (2001) ......................................................................... 7

*Robinson v. Gov't of Malaysia,* 269 F.3d 133 (2d Cir. 2001) .....................................................11

*Roman v. Greenwich Village Dental Arts,* No. 21-cv-5939 (JGK) (S.D.N.Y. Sept. 13, 2022)....14

*Romero v. ZipTop,* No. 20-cv-10189 (LJL) (Dkt. 27) (S.D.N.Y.) ...............................................3

*Ross v. Royal Pizza Café Coop.,* No. 17-cv-6294 (FB) (RML) (E.D.N.Y. Aug. 1, 2018) (Dkt. 13) ..............................................................................................................................................21

*Sanchez v. NutCo, Inc.,* No. 20-CV-10107 (JPO), 2022 WL 846896 (S.D.N.Y. Mar. 22, 2022)...8

*Smith v. United States Casualty Co.,* 1910 N.Y. LEXIS 1084 (N.Y. Ct. App. 1910) ... ……….17

*Suárez-Torres v. Panadería Y Repostería España, Inc.,* 988 F.3d 542 (1st Cir. 2021) /............. 13

*Tavarez v. Moo Organic Chocolates, LLC,* 641 F. Supp. 3d 76 (S.D.N.Y. 2022*) ..................8, 11
*Thorne v. Boston Market Corp.,* 469 F. Supp. 3d 130 (S.D.N.Y. 2020) .....................................10
*Velazquez v. The Spice & Tea Exchange,* No. 22-cv-7535 (PGG) (RWL) (S.D.N.Y. Dec. 3, 2024)
....................................... ……....………………………………………………*passim*
*Weeks v. The Outdoor Gear Exchange,* No. 22-cv-1283 (ER) (S.D.N.Y. Mar. 2, 2023) .............14
*Zelvin v. H. Heritage, Inc.*, 23-cv-8022 (JGLC) (8/9/24)...........................................................14

**Statutes**

42 U.S.C. § 12182 et seq. (ADA) ...........................................................................................4
N.Y. Exec. Law § 290 et seq. (NYSHRL) .............................................................................. 20
N.Y.C. Admin. Code § 8-107(4) (NYCHRL) .....................................................................4, 20
N.Y. Civil Rights Law §§ 60, 65 .............................................................................................17

**Regulations and Administrative Materials**

Federal Trade Commission Decision and Order (Dkt. C-4817, #222-3156) (Apr. 21, 2025)
USPTO Trademark Registrations for "New You Bariatric Group"
Audit Reports from PowerMapper and ADASure
Accessibility Statement from accessiBe

**Secondary Sources**

Columbia Human Rights Law Review, Issue 53.1, pp. 129–188 ............................................. 17
Declaration of Michael McCafferty, ADA Expert ..................................................................... 5
*Researchandmarkets.com, Apr. 14, 2025,*
*https://www.researchandmarkets.com/reports/5309222/meal-replacement-products-market-shar*
*e#product--toc* ....................................................................................................................1

## INDEX OF EXHIBITS

**Exhibit A**    Rule 56.1 Plaintiffs' Counter Statement of Material Facts

**Exhibit B**    Rule 56.1 Plaintiffs' Statement of Material Facts

**Exhibit C**    Email of Plaintiff's Proposal For an Independent Medical Examination

**Exhibit D**    Declaration of Manuel Delacruz

**Exhibit E**    Audit Report – ADASure

**Exhibit F**    Declaration of Michael McCafferty – Plaintiff's ADA Expert

**Exhibit G**    PowerMapper Audit

**Exhibit H**    Declaration of Dr. Panganiban and Medical Records

**Exhibit I**    Medical Records of St. Mark's Place Institute of Mental Health

**Exhibit J**    USPTO Registrations For New You Bariatric Group

**Exhibit K**    There Is No Such Thing As A "Legal Name"

**Exhibit L**    *Matter of Kobra (Hossain)*, N.Y.C. Civil Ct., 2012 N.Y. Misc. LEXIS 5127

**Exhibit M**    *Matter of Bishop*, N.Y.S. Sup. Ct., 2006 Misc. LEXIS 366

**Exhibit N**    *Smith v. United States Casualty Co.*, N.Y. Ct. of App., 1910 N.Y. LEXIS 1084

**Exhibit O**    *Santiago v. E.W. Bliss*, IL Sup. Ct., 2012

**Exhibit P**    *Lopez v. Sromovsky*, USDC EDPA 17-2183

**Exhibit Q**    FTC Order – accessible

**Exhibit R**    Declaration of Jeffrey M. Gottlieb, Esq.

## I.    <u>INTRODUCTION</u>

This action was commenced by Emanuel Delacruz, a blind Plaintiff, against Defendants who own and operate 30 physical clinics and retail establishments in the New York Metropolitan area and promote a website that sells various food products, all supported by a great deal of advertising including on television and social media. Defendants' advertisements appear to be ubiquitous both within this geographic area and the social media algorithm. Mr. Delacruz has been blind since a young age and has two prosthetic eye balls. Plaintiff's action is pursuant to the American With Disabilities Act (ADA) and corollary New York State (NYS) and New York City (NYC) discrimination statutes due to barriers on Defendants' website, https://bariatric.stopobesityforlife.com/ (the "Website"), that prevented him from utilizing the Website to purchase meal replacement shakes.

Many consumers purchase meal replacement products for a variety of reasons. According to ResearchandMarkets.com, in an April 2025 report, "The Meal Replacement Products Market size is estimated at USD 15.12 billion in 2025, and is expected to reach USD 22.49 billion by 2030, at a CAGR of 8.26% during the forecast period (2025-2030)." (*Research and Markets, Meal Replacement Products Market 2025-2030 Meal Replacement Market to Surpass $21.3B by 2030, Fueled by Plant-Based and Personalized Nutrition Trends, Researchandmarkets.com*, Apr. 14, 2025, https://www.researchandmarkets.com/reports/5309222/meal-replacement-products-market-share#product--toc) The meal replacement industry is big business and not just for consumers who are concerned about their weight. "The global meal replacement products market is set to grow due to rising consciousness and the growing popularity of plant-based & vegan meal replacement options." *Ibid* Given the potential health benefits of meal replacements, Plaintiff wanted to join

in the trend and to purchase some meal replacements. Except he was prevented from doing so due to discriminatory barriers on the Defendants' Website.

Defendants move to dismiss pursuant to FRCP §12(b)(1) for lack of standing, FRCP § 12(b)(6) failure to state a claim and for Summary Judgment. Plaintiff cross-moves for Summary Judgment because Defendants' motion is totally devoid of merit and should be denied in its entirety. Plaintiff's Cross-Motion for Summary Judgment should be granted because Plaintiff has submitted substantial admissible evidence that is not controverted.

Defendants are waging a scorched-earth policy in this litigation and are vexatious litigants in derogation of FRCP § 1 which requires the "just, speedy and inexpensive determination of every action." This policy was exemplified by Defendants' Counsel in Court before Your Honor at a hearing held on March 25, 2025. Your Honor asked the parties if they would agree to a settlement conference and Defendants' Counsel bristled at the suggestion and replied that her "clients have deep pockets and will fight this case up to the Supreme Court."

Plaintiff submitted uncontroverted and substantial medical evidence to the Court for an *in camera* review with copies to Defendant which proves beyond any doubt that the Plaintiff is, in fact, blind. For some reason, Defendants do not accept these facts. Subsequent to the hearing, Plaintiff's Counsel offered Defendants a proposal ( Ex. "C") pursuant to which Plaintiff would submit to an Independent Medical Examination (IME) to further substantiate his claim of blindness, and the parties would accept such determination. Plaintiff further offered to voluntarily dismiss the action with prejudice and pay for the costs of the IME if the examination did not determine that he is blind. For some reason Defendants would not agree to this proposal.

Defendants own and operate many profitable weight loss clinics and retail operations throughout the New York Tri-State Area and, indeed, have "deep pockets." Plaintiff, due to his

blindness, has never been gainfully employed, lives alone and subsists on Social Security Disability Insurance. It is apparent that Defendants' end game is to wear down Plaintiff by financial means since the evidence that is favorable to Plaintiff is overwhelming. As part of Defendants' strategy, they devote a great deal of effort regarding the Plaintiff's name and include in their motion hundreds of pages of Facebook photos that do not have any association to the Plaintiff but belong to another person with the same name.

In addition to not accepting clear and convincing evidence of Plaintiff's medical condition, Defendants' motion papers attempt to mislead the Court by misclassifying an identification card (ID) from New York State as a driver's license and a photo of the Plaintiff posing in a friend's car as operating and driving a motor vehicle. In their desperation, Defendants' sole declaration in support falsely states that Plaintiff was employed by the Metropolitan Transit Authority ("MTA") as a mechanic. Another time, Defendants' counsel represented that the Plaintiff possessed a taxicab license. Despite subpoenas to both NYS Department of Motor Vehicles and the MTA, to date, Defendants have not yet produced one scintilla of evidence to support these false assertions.

## II.    <u>PROCEDURAL HISTORY</u>

Complaint – July 24, 2023; Waiver of Service – August 21, 2023; Initial Pre-Trial Conference – October 10, 2023; Answer – October 18, 2023; First Amended Complaint – October 30, 2023; Answer to First Amended Complaint – November 24, 2023; Joint Status Report – November 30, 2023; Defendant served with Requests For Admission – February 25, 2024 (no response to Request For Production nor Interrogatories); Discovery/Case Management Conference -  February 10, 2025; Defendants' Motion to Dismiss and For Summary Judgment – March 11, 2025; Discovery/Case Management/Scheduling Conference – March 25, 2025; Order For Amending Caption – April 1, 2025.

### III.    FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC") and accepted as true for the purposes of the Motion to Dismiss. *See, Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025). Plaintiff is a visually impaired and legally blind person who uses screen-reading software to read website content. FAC. 2. Defendants own, operate, and control, the Website which is an online store that offers food products for purchase. FAC. 31.

Plaintiff sought to purchase meal replacement shakes from the Website, *id.* at ¶¶ 42 and 43. Plaintiff attempted to purchase this product from the Website "multiple times, most recently on April 27, 2025," *id.* 42 and Delacruz Decl. Ex "D" at 9, but was unable to complete the purchase due to the inaccessibility of the Website, *id.* 43. Specifically, Plaintiff alleges that the Website contains multiple access barriers that prevent free and full use by the Plaintiff using screen-reading software. *id.* at 51, *et seq.* If these barriers are remedied, Plaintiff intends to immediately revisit the Website to purchase meal replacement shakes. *Id.* at 49.

Plaintiff alleges that Defendant has violated Title III of the ADA, 42 U.S.C. § 12182 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4), by denying Plaintiff and other similarly situated individuals with visual disabilities "access to Defendants' website and thus the products and services that are offered thereby general public" on the Website. FAC. 5 *et seq.* Plaintiff seeks, among other things, damages, injunctive relief, and declaratory relief.

#### A.  The Plaintiff Is Blind.

The Declaration of Dr. Panganiban and the medical records attached thereto (Ex. "H"), the medical records of the St. Mark's Place Institute of Mental Health (Ex. "I") and the

Declaration of the Plaintiff (Ex. "D") all show by overwhelming, uncontroverted and admissible evidence that the Plaintiff has two prosthetic eyes and is blind and has been since he was a child.

### B. Defendants' Website Is Non-ADA Compliant.

Defendants claim that because they utilized a widget by accessiBe, their Website is compliant with WCAG 2.1 level AA conformance (Def. Memo, pgs. 17-19, Garber Decl.,   13, Def. Ex. "H"). Plaintiff has attached (Ex. "E") an audit report from a nationally recognized expert, ADASure, and a Declaration (Ex. "F") from Michael McCafferty in support which evidences that the Website contains barriers that do not allow a blind consumer to utilize the Website. This fact was also set forth in the FAC (¶ 12 <u>et. seq.</u>) and the Declaration of the Plaintiff (Ex. "D",   9). As set forth in McCafferty's Declaration, <u>id.</u>, many Courts in the Southern District of New York have upheld ADASure audit evidence of non-compliance compared to audits of accessiBe.

In the instant action, Defendants attach a mere Statement of Services that accessiBe may perform and it is **not even an audit** of the Website. The Defendants have not submitted any actual proof that the Website is, in fact, compliant. Therefore, it is uncontroverted that the Website is not ADA compliant. The Declaration of Garber that Defendants submit (*id.*) states the Website is compliant and is not based on personal knowledge and merely parrots his counsel's views and should therefore be disregarded. Defendants also mistakenly claim that technology has not yet been developed to accurately describe pictures (Def. Memo, pgs. 18-19), Defendant overlooks the fact that compliant websites use actual persons to code the website.

> "Spice & Tea's accessiBe report "fares no better." * * * While the accessiBe report "states that the Website is compliant[,]" the report "does not identify the qualifications of the auditor, does not explain the methodology used, and does not explain the basis for its conclusion." * * * Judge Lehrburger concludes that "Spice & Tea has not established, on the instant motion, that its website is in fact ADA-compliant and that it is 'absolutely clear the allegedly wrongful behavior

could not reasonably be expected to recur.'" * * * (quoting <u>Friends of the Earth</u>, 528 U.S. at 190)

Accordingly, Judge Lehrburger concludes that Velazquez's claims are not moot."

*Velazquez v. The Spice & Tea Exchange*, 22-cv-7535 (PGG) (RWL) 12/3/24, DKT. 70, pg. 9.

Defendants' so-called Certificate of Compliance from accessiBe dated July 25, 2023 is not an audit of Defendants' Website, it is not signed, it is dated prior to the filing of the First Amended Complaint and even states at pg. 4 "there still may be pages or sections that are not fully accessible, or are lacking an adequate technological solution to make them accessible." This "Certificate" is not even a Certificate, it is merely a statement from accessiBe to their clients of some of the services that they provide and they do not even call it a Certificate, they name it an "Accessibility Statement" which is totally meaningless.

Plaintiff has annexed hereto two actual audits of Defendants' Website (Exs. "E" and "G"). The first audit was performed on a SortSite program administrated by PowerMapper and the second audit was performed by ADASure. Both audits evidenced Defendants' Website to be in substantial non-compliance with WCAG 2.0, the internationally recognized standard. In *Del-Orden v. Bonobos*, SDNY 1:17-cv-2744-PAE 2017 WL6547902 (S.D.N.Y. Dec. 20, 2017)., an identical audit report was submitted by ADASure and Michael McCaffrey in opposition to an accessiBe report, Judge Engelmeyer found that the website had unequal access as corroborated by the ADASure report.

The Federal Trade Commission has entered a Decision and Order (Dkt. C-4817) #222-3156 on April 21, 2025, against accessiBe prohibiting them from making any representation that their widget "Can make any website compliant with WCAG (Ex. "Q") pg. 3.

**C. Defendants Sell Their Products To All Consumers Without Limitation And The Website Is Interactive.**

Defendants argue that they sell their products only to "bariatric patients." Defendants' Website proves this to be false (Def., Ex. "A"). Defendants' Website and advertising does not so limit its sales and this argument is not plausible. The only real limitation to the sale of Defendants' products is their limitation to disabled consumers by reason of an inaccessible Website to blind and/or low vision persons, which constitutes an impermissible discrimination.

> "See *PGA Tour, 532 U.S. at 680* (explaining that, where an entity makes a privilege "available to members of the general public," it may not discriminate against disabled members of the public who seek to invoke that privilege); *Pallozzi, 198 F.3d at 32-33* (holding that ADA prohibits public accommodation from "refusing to sell them its merchandise by reason of discrimination against their disability"); see also *Molski v. M.J. Cable, Inc., 481 F.3d 724, 733 (9ᵗʰ Cir. 2007)* ("One need not be a client or customer of a public accommodation to feel the sting of its discrimination."). Indeed, the ADA's general prohibition of discrimination on the basis of disability contains no limitation to only "clients or customers."

*Frawley v. Med. Mgmt. Grp. of N.Y.*, 2022 U.S. Dist. LEXIS 75235 21-cv-8894 (4/25/22) (USB) (SLC), pg. 6.

Defendants further argue that the alleged injury to the Plaintiff was merely an informational injury (Def. Memo, pg. 10). As shown in Defendants' own exhibit ("A"), Defendants sell goods on their Website therefore the Website is interactive and not merely informational as Defendants have misclassified it. Additionally, Defendants falsely claim that the Website sells products "only to the bariatric patients." (*Id.*)  This allegation is also false and the Website pages attached to Defendants' moving papers do not show such a restriction. Nowhere on the Website does it mention that the sale of products is limited to patients of the practice. One does not even need an account or login information to peruse the items available for sale.

## IV.    PLAINTIFF HAS EVIDENCED AN INTENT TO RETURN TO THE WEBSITE

Defendants argue that Plaintiff has failed to state a concrete injury sufficient to support

Article III standing because he did not establish a threat of future injury. (Def. Memo, pgs. 9-10).

> "In the ADA context, the Second Circuit has found standing where a plaintiff (1)
> alleges past injury under the ADA, (2) it is reasonable to infer from the complaint
> that the discriminatory treatment will continue; and (3) it is reasonable to infer
> that the plaintiff intends to return to the website. *See Guglielmo v. Nebraska
> Furniture Mart, Inc.*, No. 19-CV-11197 (KPF), 2020 WL 7480619, at *3
> (S.D.N.Y. Dec. 18, 2020) (quoting *Harty v. Greenwich Hosp. Grp., LLC*, 536 F.
> App'x 154, 154–55 (2d Cir. 2013)).   "In the virtual world, the third requirement
> can be met by non-conclusory, plausible factual allegations from which it is
> reasonable to infer, based on the past frequency of visits and the plaintiff's
> articulated interest in the products or services available on the particular website,
> that the plaintiff intends to return to the website." *Loadholt v. Dungarees, Inc.*,
> No. 22-CV-4699, 2023 WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023) (citing *Harty
> v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022)).

> Plaintiff has alleged facts that plausibly support Article III standing, including that
> he suffered a past injury, that discriminatory treatment will continue, and that
> because of his interest in the product's features, he intends to return to
> Defendant's Website once the defects are cured. [*See* FAC, ____]. The FAC
> states that Plaintiff suffered an injury and outlines the specific accessibility
> barriers that hindered Plaintiff's ability to independently use and navigate the
> Website, such as "the lack of navigation links, inaccurate landmark structure,
> inaccurate heading hierarchy, hidden elements on the web page, inaccessible
> drop-down menus, redundant links where adjacent links go to the same URL
> address, lack of alt-text on graphics, changing of content without advance
> warning, and the requirement that transactions be performed solely with a
> mouse." FAC ¶¶ 29–36; *see also Sanchez v. NutCo, Inc.*, No. 20-CV-10107 (JPO),
> 2022 WL 846896, at *2 (S.D.N.Y. Mar. 22, 2022) (finding injury requirement met
> where plaintiff described "the nature of the Website's barriers and how his injury
> is traceable to them").

> Further, the FAC alleges    facts sufficient to infer that, unless remedied, the
> Website's accessibility barriers will continue to impede Plaintiff's attempts to
> complete a purchase order."

Specifically, Plaintiff visited Defendant's Website on three separate occasions and was

unable to buy the desired meal replacement shake. FAC.    42, Delacruz Decl. Ex. "D"   9. "*See

Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 82 (S.D.N.Y. Nov. 21, 2022)

(finding likelihood that discriminatory conduct will continue sufficiently pled . . .”; *Davis v. Wild Friends Foods, Inc.*, No. 22-CV-04244 (LJL), 2023 WL 4364465, at *5 (S.D.N.Y. July 5, 2023).

Finally, Plaintiff’s allegations support a reasonable inference that, once the accessibility barriers are remedied, he intends to purchase the [shake] from Defendant’s Website. These allegations are sufficient to establish Plaintiff’s intent to return to the Website. *See Davis*, 2023 WL 4364465, at *6 (intent to return sufficiently pled where plaintiff “provides details about his past visits to the Website, including what item he hoped to purchase, . . .” *see also Guerrero v. Ogawa USA Inc.*, No. 22-CV-2583 (LGS), 2023 WL 4187561, at *3 (S.D.N.Y. June 26, 2023) and *Tavarez*, at 82–83.

Accordingly, Plaintiff has pled sufficient facts to establish standing in this case.

## V.    **BOTH DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE**

The Garber Declaration states that Defendant New You “does not provide any services to the public at large, but rather merely is a private company that provides administrative services, such as submitting billing, collecting accounts receivable and other administrative services, to LIM for a fee.” (Decl.    3). This allegation is in contrast to the Website which does not name LIM and only mentions “New York Bariatric Group” throughout. Additionally, New You is the registrant for the New York Bariatric Group trademarks which include “nutritional supplement drink mixes pursuant to the records of the U.S. Patent and Trademark Office (PTO) Ex. “J”.

The Garber Declaration lacks truthfulness and the Website and PTO trademark records evidence contradictory facts. Additionally, the FAC alleges that both Defendants own and operate the Website which allegations must be deemed as true on a Motion to Dismiss unless Defendants produce evidence otherwise, which they have failed to do FAC ¶¶ 23, 27. Furthermore, Defendants failed to respond to Plaintiff’s discovery which would have been able to ascertain the true relationships between and among these two corporate entities which are both

run by Garber (Decl.    1). Accordingly, both corporations are proper defendants in this action and are both liable hereunder.

## VI.    THE ADA APPLIES TO WEBSITES

Defendants mistakenly claim that only the Attorney General may enforce the ADA (Def. Memo, pgs. 17-18) and further that the ADA does not apply to websites (*Id.*) Hundreds and hundreds of Courts including the SDNY have held otherwise and Defendant fails to cite even one case in support of this ridiculous assertion. *See*, *Pallozzi v. Allstate*, 2nd Cir., 198 F.3d 28 (1999). Plaintiff asserts that he has been injured, and that this injury will continue in the future (FAC.    40 et. seq.). Furthermore, this Court in *Romero v. ZipTop,* held that the Congressional intent behind the ADA itself was to make "private attorneys general."

> "The article notes that Mr. Mizrahi has filed a number of complaints asserting violations of the ADA, but that conduct is not necessarily problematic. Presumably, it is what Congress intended when it provided for attorneys fees and thereby made plaintiffs a "'private attorneys general,' vindicating a policy that Congress considered of the highest priority." Fox v. Vice, 563 U.S. 826, 833 (2011) (quoting Newman v. Piggie Park Enterps., Inc., 390 U.S. 400, 402 (1968) (per curiam)) (considering fee-shifting provision of IDEA). Defendant had the opportunity to take Romero's deposition if he was concerned that the Plaintiff's complaints were not genuine and that counsel was just generating copycat complaints. It eschewed that opportunity."

*Romero v. ZipTop*, 20-cv-10189 (LJL) (DKT. 27)

## VII.    LEGAL STANDARD, FRCP 12(B)(1) AND 12(B)(6)

"A district court must dismiss a claim under Rule 12(b)(1) if a plaintiff fails to allege facts sufficient to establish standing under Article III of the Constitution." *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 400 (S.D.N.Y. 2024) (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015)). "'The standard of review for 12(b)(1) motions is "substantively identical" to Rule 12(b)(6) motions,' but with the critical difference that the burden is on the plaintiff asserting subject matter jurisdiction to 'prov[e] by a preponderance of the evidence that [subject matter jurisdiction] exists.'" *Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 134 (S.D.N.Y. 2020) (alterations in original) (first quoting *Alphas v. City of N.Y. Bus. Integrity Comm'n*, No.

15-cv-03424 (ALC), 2017 WL 1929544, at *2 (S.D.N.Y. May 9, 2017); and then quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first." *Feliz v. IHealth Labs Inc.*, No. 23-cv-00354 (JLR), 2024 WL 342701, at *2 (S.D.N.Y. Jan. 30, 2024) (quoting *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 WL 4364465, at *3 (S.D.N.Y. July 5, 2023)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In general, 'a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.'" *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 367 (S.D.N.Y. 2022) (quoting *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 342 (S.D.N.Y. 2023) (alterations in original) (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011))."

*Fernandez v. Vanilla Chip*, 1:24-cv-5639 (JLR) 4/18/2025 (DKT. 15) pgs. 3-4

Here, the FAC does contain "allegations sufficient to raise an entitlement to relief above the speculative level".

## A.    Plaintiff Has Produced Concrete Sufficient Facts To Defeat The Motions To Dismiss.

"Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party. Robinson v. Gov't of Malay., 269 F.3d 133, 140 (2d Cir. 2001). However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion … reveal the existence of factual problems' in the assertion of jurisdiction. * * *

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. Twombly, 550 U.S. at

555, 557. The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a contextspecific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011)."

Davis v. Wild Friends Foods, Inc., 22-cv-4244 (LJL) (July 5, 2023) (DKT. 25)

In this case, Defendants have not taken any discovery and have failed, neglected, and refused, to provide discovery to Plaintiff.

Defendants' Exhibit "E" contains 113 pages from the Facebook posting of another Emanuel Delacruz. None of the photos contained therein are of the Plaintiff and the Court can easily determine that by comparing those photos to the ID of the Plaintiff as Def. Ex. B.

The Declarations of the Plaintiff confirm that the Plaintiff is not the same person contained in Defendants' massive Facebook posting (Ex. E). The Court itself can easily determine that the massive Facebook exhibit is not the same person in the ID.

**B. Plaintiff Is Not A "Tester" And Has Suffered An Injury And Has Standing.**

Defendants' Memo and supporting exhibits show the numerous ADA cases filed by the Plaintiff and Plaintiff admits to same. (Def. Memo, pgs. 3, 19, 21; Def., Ex. "1", Ex. "C" *et seq.*) However, this is merely evidence of the number of companies that fail to maintain websites accessible to blind consumers and the systematic discrimination against blind and visually impaired consumers by websites.

"Second, the Court disagrees with Defendant that because Plaintiff has previously filed over seventy similar lawsuits, Plaintiff's claims of standing are necessarily implausible. It is not uncommon for people to use and attempt to access multiple websites a day—whether looking for information or to buy something. And, it is not implausible that many such websites have issues that make them inaccessible to visually impaired persons. Thus, the fact that Plaintiff has filed many similar lawsuits to this one may, as Plaintiff argues, reflect the systematic issues that

visually impaired consumers face on a daily basis and does not compel the conclusion that Plaintiff invented her allegations of standing. "There is nothing inherently wrong with filing duplicative lawsuits against multiple defendants if the harms to be remedied do exist and are indeed identical." *Matzura v. Red Lobster Hosp. LLC*, 2020 WL 3640075, at *4 (S.D.N.Y. July 6, 2020); *see also Delacruz v. Ruby Tuesday, Inc.*, 2020 WL 5440576, at *3 (S.D.N.Y. Sept. 8m 2020) (same).

This conclusion is not contrary to the Second Circuit's decision in *Calcano*."

*Maddy v. Life Time*, 22-cv-5007 (LJL) (DKT. 22)

Here, as in *Maddy,* the number of times that the Plaintiff has filed lawsuits is not relevant and it should not have any bearing on the Plaintiff's claims in this action.

In the instant case, Defendants not only failed to take any discovery but also failed to provide responses to Interrogatories and Request For Production to Plaintiffs. Even if the Plaintiff was a "tester" which he vehemently denies, a "tester" still has standing to pursue an ADA case.

"Does Laufer's self-admitted status as a tester -- that she had no intent to do anything but test the website's ADA compliance -- mean she hasn't suffered an injury?

Acheson seems to accept that tester status alone doesn't defeat standing – a party can set out to determine whether public accommodations are complying with a statute. That concession makes sense. We said just a year ago that a plaintiff's status as a tester does not destroy her standing. *See Suárez-Torres v. Panaderia Y Reposteria España, Inc.*, 988 F.3d 542, 550–51 (1st Cir. 2021). That is, a plaintiff's deliberate choice to see if accommodations are obeying a statute doesn't mean that her injury in fact is any less real or concrete. Id. And *Suárez* broke no new ground -- the Supreme Court reached the same result forty years ago. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373–74 (1982). * * *…

Adding on, the Supreme Court has repeatedly said that denial of information to which plaintiffs have a legal right can be a concrete injury in fact."

*Laufer v. Acheson Hotels, LLC, No. 21-1410 (1st Cir. Oct. 5, 2022)*, pgs. 14-18

"To satisfy the requirements of Article III standing, a party must show that (1) the party has suffered an actual injury or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and conduct complained of; and (3) it is likely that a favorable decision in the case will redress the injury. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61, (1992). "The party

-13-

invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561.

Injury-in-fact is satisfied here. The plaintiff alleges that he has tried, unsuccessfully, to use the website in the past. Because the website is inaccessible, the plaintiff alleges that he has been denied access to the services it offers. Furthermore, the plaintiff alleges that he would use the website in the future were the website made accessible. Compl.   33. The plaintiff has therefore suffered an actual injury that is both concrete, insofar as the plaintiff has been denied services available to sighted individuals, and particularized, insofar as the plaintiff himself has attempted to access the website.

Causation and redressability are also both satisfied. The plaintiff has alleged adequately that the defendants' website's inaccessibility caused the plaintiff's injury. Additionally, making the defendants' website accessible would redress the plaintiff's injury of being unable to access the website.

Accordingly, the defendants' motion to dismiss under Rule 12(b)(1) for lack of standing is denied."

Roman v. Greenwich Village Dental Arts, 21-cv-5939 (JGK) (9/13/22) (DKT. 33), pgs. 4-6

"According to Laufer, she is entitled to the accessibility information as an individual with a disability, and Naranda's failure to provide it constitutes discrimination under Title III of the ADA. Accepting that theory of Laufer's ADA claim for purposes of the standing analysis, she has alleged an informational injury that gives her Article III standing to sue under Havens Realty, Public Citizen, and Akins."

Laufer v. Naranda Hotels, LLC, No. 20-2348, -- F.4th --, 2023 WL 2000998 (4th Cir. Feb. 15, 2023), pg. 18

See also, Chalas v. Barlean's Organic Oil, 22-cv-4178 (CM) (11/22/22); Weeks v. The Outdoor Gear Exchange, 22-cv-1283 (ER) (3/2/23); Loadholt v. Shirtspace, 22-cv-2870 (ALC) (3/6/2023)

Zelvin v. H. Heritage, Inc., 23-cv-8022 (JGLC) (8/9/24)

"In rejecting Spice & Tea's "serial plaintiff" argument, Judge Lehrburger reasons as follows:

The Second Circuit and other courts have recognized that plaintiffs who bring numerous ADA actions may nevertheless have a plausible cause of action. Thus, "testers," or those who surveil places of public accommodations, including websites, to check if they comply with the ADA, can have standing if they demonstrate that "they have suffered an Article III injury in fact." Harty v. West Point Realty, Inc., 28 F.4th 435, 444 n.3 (2d Cir. 2022)). "[T]he fact that the

> [p]laintiff... may be an ADA tester is not dispositive." <u>Davis v. Wild Friends Foods, Inc.</u>, No. 22-CV-4244, 2023 WL 4364465, at *4 (S.D.N.Y. July 5, 2023). The number of complaints filed by the plaintiff "may just as well reflect the rampant nature of discrimination that persons with visual impairments face when using the internet." <u>Id.</u>; <u>see also</u> <u>Jimenez v. Senior Exchange, Inc.</u>, No. 23-CV-0323, 2024 WL 1833808, at *4 (S.D.N.Y. Apr. 26, 2024) ("Plaintiff may well have filed many cases in this District because she has experienced genuine accessibility barriers when attempting to access other websites"); <u>Camacho v. Vanderbilt University</u>, No. 18-CV-10694, 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019) (denying defendant's motion to dismiss for lack of standing despite "accept[ing] [d]efendant's representation that [p]laintiff filed 50 other complaints containing similar, if not identical, allegations against other institutions"). Velazquez has pled facts sufficient to show that he suffered an injury in fact, regardless of the number of complaints he has filed."

<u>*Velazquez v. The Spice & Tea Exchange*</u>, <u>*infra*</u>, pg. 9

Defendants premise the Motion to Dismiss on the misconception that the injunctive relief sought by the Plaintiff is solely for damages for past injury and not a "forward-looking remedy to stop a future injury from occurring" (Def. Memo., pgs. 8-9). Plaintiff seeks injunctive relief to require Defendants to remediate their Website in order that the Plaintiff (and other blind persons) may utilize the Website in the future. FAC (¶ 54 <u>et</u>. <u>seq</u>.). Defendants also mischaracterize the Website as "informational". Quite the opposite is true as shown by the Website itself which Defendants attach. The Website, among other things, sells products on the Website and anyone is able to purchase these products except for blind and visually impaired consumers due to the discriminatory barriers on Defendants' website. The website is interactive. All of Defendants' arguments about "downstream consequences" for an informational only harm are irrelevant.

Defendants also mistakenly claim that Plaintiff should have contacted the Defendants "Accessibility Manager" to obtain the information the Defendant needed. Not only is that <u>not</u> a requirement of the ADA, that, in and of itself, is discrimination due to Plaintiff's disability. Furthermore, Defendants fail to allege if the "Accessibility Manager" may be reached

24-hours/day and what training and qualifications this person has to handle inquiries from blind consumers.

Defendants cite several recent ADA cases filed in this Court by the Plaintiffs (Def. Memo., pg. 19) that were resolved expeditiously. They conclude without any direct knowledge that therefore "Plaintiff being a tester only has the sole purpose of obtaining a fast settlement." Defendants have no knowledge of the terms of these confidential settlements and yet they made these wild and unsupported assertions. Is the time to resolve an action an indication of the merits thereof?

Defendants continue "that the mere allegation of general emotional distress fail to satisfy a concrete Article III injury." (Def. Memo., pg. 19). This was not the only allegation regarding an Article III injury and the FAC was replete with the injuries alleged. Additionally, one of the Plaintiff's medical reports filed *in camera* discusses the Plaintiff's emotional distress. Ex. "I". Also stated in the Declaration of Delacruz, he suffers emotional and psychological issues which are exacerbated by Defendants' inaccessible Website and the false and offensive allegations made by Defendants especially that he is not blind. (Ex. "D"), pg. 3 et. seq.

### VIII.    THE NAMES USED BY THE PLAINTIFF WITH THREE DIFFERENT SPELLINGS ARE ALL HIS "LEGAL NAME"

Defendants have exhausted Plaintiff's and the Court's time with an absolutely ridiculous claim of intentional fraud and deceit because Plaintiff's first name in this action "Emanuel" contains the letter "E" whereas IDs of the Plaintiff spell his first name as "Manuel" without the letter "E". Among other defects in Defendants' claim is that it is a Motion For Sanctions pursuant to FRCP §11(c)(2) and must be a separate motion in addition to the requirements of a 21-day safe harbor letter. Defendants have not complied with the statutory requirements.

The parties ultimately agreed to amend the caption of this action to include both spellings of the Plaintiff's first name as well as another commonly used name of Plaintiff "Manny" which the Court so ordered (DKT. 56).

Defendants claim that Plaintiff filed this action and many other similar actions "intentionally under a fictitious name that is not Plaintiff's legal name" (Memo., pgs. 19-22). There Is No Such Thing As A "Legal Name". *See*, *Columbia Human Rights Law Review, Issue 53.1*, pgs. 129-188 (Ptfs., Ex. "K").

Additionally, at common law, a person has the right to change his name at will without any legal process so long as it is done without the intent to deceive or for fraudulent purposes. See, *Matter of Kobra (Hossain)*, N.Y.C. Civil Ct., 2012 N.Y. Misc. LEXIS 5127 (Ex. "L"); *Matter of Bishop*, N.Y.S. Sup. Ct., 2006 Misc. LEXIS 366 (Ex. "M"); *Smith v. United States Casualty Co.*, N.Y. Ct. of App., 1910 N.Y. LEXIS 1084 (Ptf., Ex. "N"); *Santiago v. E.W. Bliss*, IL Sup. Ct., 2012 (Ex. "O"); *Lopez v. Sromovsky*, USDC EDPA 17-2183 (Ex. "P"); N.Y. Civil Rights Law §§ 60, 65. The New York statutes codified a person's common law right to use any name that the person desires so long as it is not for fraudulent purposes.

The fact that Defendants' counsel and their sole declarant state that the Plaintiff's alternate spelling of his first name is fraudulent does not make it so. This is merely a big lie without any scintilla of evidence to support this preposterous allegation. This is another example of Defendants trying to deflect from the fact that they lack meritorious defenses to the claims of the Plaintiff and is a part of their vexatious scorched-earth strategy.

It is very common for many people to use various forms or abbreviations or different spelling changes of their names throughout their lives; for example, Robert – Rob or Bob; Michael – Mike; Susan – Sue; Jeffrey – Jeff; or even Katherine – Kat, Kathy, Cathy, Catherine,

and so on. Mr. Delacruz is Dominican-American and has used Manuel, Emmanuel and Manny interchangeable without any intent to commit fraud in any shape, manner or form. He has not filed for bankruptcy, has not tried to remain hidden from creditors nor has he attempted to deceive anyone by the use of his name. It is absurd, disingenuous, and unconscionable for the Defendant to speculate, argue, assert or claim otherwise.

Defendants' counsel raised this issue with the undersigned early in the litigation and Plaintiff readily provided a copy of his governmental issued ID to Defendants (Def. Ex. "B") which showed his name as "Manuel" rather than "Emmanuel" as his name is spelled in this action and numerous other similar lawsuits that our law firm brought on behalf of the Plaintiff. Defendants' Ex. "D" is labeled as DMV driving abstract is extremely misleading. Although it is issued by the DMV it is a receipt for this ID (not a motor vehicle license).

## IX.    LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, including depositions, documents, affidavits, or declarations "which it believes demonstrate[s] the absence of a genuine issue of material fact," _Celotex Corp. v. Catrett_, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing … that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 252 (1986). To oppose summary judgment, "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. _Bickerstaff v. Vassar Coll._, 196 F.3d 435, 452 (2d Cir. 1999); _see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 586 (1986) (holding the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (internal quotations and citations omitted)).

A genuine dispute of material fact exists when "the evidence is such a reasonable jury could return a verdict for the nonmoving party." _Anderson_, 477 U.S. at 248; _accord Gen. Start Nat'l Ins. Co. v. Universal Fabricators, Inc._, 585 F.3d 662 (2d Cir. 2009); _Roe v. City of Waterbury_, 542 F.3d 31, 35 (2d Cir. 2008); _Benn v. Kissane_, 510 F. App'x 34, 36 (2d Cir. 2013). Courts must "draw all rational inferences in the non-movant's favor" when reviewing the record. _Kirkland v. Cablevision Sys._, 760 F.3d 223, 224 (2d Cir. 2014) (citing _Anderson_, 477 U.S. at 248). Importantly, "the judge's function is not [ ] to weigh the evidence and determine the truth of the matter" or determine a witness's credibility. _Anderson_, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." _Id._ at 250. A court should grant summary judgment when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." _Celotex_, 477 U.S. at 322.

_Feng Xue and Calculus Trading Technology, LLC v. Stewart Koenig and Prime Consulting International, LLC_, SDNY 19-cv-07630 (NSR)(AEK), 03/31/2025, at pg. 3.

## X.    PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

The standards for summary judgment have been discussed _infra_ as well as the requirements for standing in an ADA website case.

Plaintiff is blind beyond a doubt. Plaintiff attempted to purchase a product on Defendants' Website whose products are available to all members of the public; however, Plaintiff was unable to do so as a result of the barriers existing on Defendants' Website which made it inaccessible. Plaintiff is not a "tester" and has suffered a real injury on Defendants' interactive inaccessible Website. As a result, Defendants' violated the ADA and corollary NYS and NYC statutes which discriminated against the Plaintiff due to his disability and the Plaintiff has been damaged thereby. Defendants' Website which is a nexus to their physical locations is a place of public accommodation. Defendants' evidence really only consists of photos of the Plaintiff posing in a mini-van and the discredited Garber declaration. Plaintiff has submitted substantial and uncontroverted admissible evidence which confirm all of the Plaintiff's allegations.

These are facts that are undisputed, warranting judgment in favor of the Plaintiff.

## XI.    PLAINTIFF HAS SUFFICIENTLY ALLEGED VIABLE CAUSES OF ACTION PURSUANT TO NYS & NYC STATUTES

Plaintiff's 2nd Cause of Action contained in the FAC states a claim against Defendants for violations of New York State Human Rights Law, N.Y. Exec. L. § 290 et. seq. Plaintiff's 3rd Cause of Action states a claim pursuant to New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

> "The Court respectfully recommends that MMG's Motion to dismiss the NYSHRL claim be denied. NYSHRL "disability discrimination claims are governed by **[\*21]** the same legal standards as federal ADA claims." Rodal v. Anesthesia Grp. of Onondaga, P.C., 369 F.3d 113, 117 n.1 (2d Cir. 2004); see Doe v. Bell, 194 Misc.2d 774, 781 n.7, 754 N.Y.S.2d 846 (Sup. Ct. N.Y. Cnty. 2003) ("As a general matter, the scope of the disability provisions of the [NYSHRL] are similar to those of the [ADA] and section 504 of the Rehabilitation Action of 1973 (29 USC § 794[a]), a precursor to the ADA."). Indeed, the NYSHRL's definition of public accommodation is arguably broader than under the ADA * * *…"). Thus, for the same reasons that she has adequately stated an ADA claim, the Court also finds that Ms. Frawley has adequately stated a claim under the NYSHRL. See Camarillo, 518 F.3d at 158 (vacating dismissal of ADA and NYSHRL claims on same grounds).
>
> The Court reaches a similar conclusion as to Ms. Frawley's NYCHRL claim. * * * Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transp. Auth., 11 F.4th 55, 68 (2d Cir. 2021) (quoting NYCHRL § 8-107(4)(1)(a)). Courts construe the NYCHRL "liberally for the accomplishment of [its] uniquely broad and remedial purposes . . . ." Ya-Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 75 (2d Cir. 2015) (internal citation omitted). The NYCHRL claim must therefore be analyzed "separately and independently from any federal and state law claims, construing [the NYCHRL's] provisions broadly in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible." Id. (internal citation omitted). As the Second Circuit has explained, "conduct that does not violate federal law may violate the NYCHRL." Brooklyn Ctr., 11 F.4th at 68 (citing Mihalik v. Credit Agricole Cheuvreux N. Am. Inc., 715 F.3d 102, 109 (2d Cir. 2013)). * * * In any event, because the ADA is only "a floor below which the [NYCHRL] cannot fall[,]" the Court finds that, having adequately pled an ADA claim, Ms. Frawley has adequately pled **[\*23]** pled an NYCHRL claim. Id.; see Andrews, 268 F. Supp. 3d at 400 ("Given the court's ruling that the plaintiff has stated a claim under the ADA and the NYSHRL—the 'floor' of protection provided by the NYCHRL—he has also stated a claim under the NYCHRL."). Accordingly, the Court respectfully recommends that MMG's Motion to dismiss the NYCHRL claim be denied."

*Frawley*, id., at 7.

*See also, Ross v. Royal Pizza Café Coop.*, 17-cv-6294 (FB) (RML) EDNY (8/1/18) (Dkt. 13),

Report and Recommendation.

## XII.    CONCLUSION

This Court should dismiss Defendants' Motion to Dismiss and for Summary Judgment

because Plaintiff has standing, has a valid claim and there are more than enough material

facts to show that there is a genuine dispute of material fact. Furthermore, this Court should

grant Plaintiffs' Cross-Motion for Summary Judgment because it is indisputable that the

Plaintiff is blind; the Defendants' website is not ADA compliant, rendering it inaccessible to

individuals who are blind or visually impaired; and the Plaintiff was unable to purchase a

product that is accessible to the general public on the Defendants' website.

Dated:  New York, New York
        May 9,  2025

**GOTTLIEB & ASSOCIATES**

/s/ Jeffrey M. Gottlieb, Esq.

Jeffrey M. Gottlieb (JG-7905)
Dana L. Gottlieb (DG-6151)
Michael A. LaBollita (ML-9985)
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
Jeffrey@Gottlieb.legal
Dana@Gottlieb.legal
Michael@Gottlieb.legal

*Attorneys for Plaintiffs*
