UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MANUEL DE LA CRUZ a/k/a EMANUEL
DELACRUZ a/k/a MANUEL DELACRUZ a/k/a
MANNY DELACRUZ and all other persons similarly
situated,

                              Plaintiff,              Case No. 1:23-cv-06405-pae-khp

                     -against-

NEW YOU BARIATRIC GROUP, LLC, and LONG
ISLAND MINIMALLY INVASIVE SURGERY, P.C.,

                            Defendants.
-------------------------------------------------------------------X

**<u>DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION TO DISMISS AND/OR FOR SUMMARY
JUDGMENT AND OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF FACTS IN REPLY AND OPPOSITION ............................................. 1

<u>ARGUMENTS</u>

   I.   PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED WITH
       PREJUDICE BECAUSE HE CANNOT DEMONSTRATE A CONCRETE,
       PARTICULARIZED, AND FORWARD LOOKING INJURY-IN-FACT .......................... 4

        A.  PLAINTIFF'S ALLEGED INFORMATIONAL INJURY IS NOT
            CONCRETE ............................................................................................. 6

        B.  PLAINTIFF HAS NOT SUFFERED A PARTICULARIZED INJURY ................... 10

   II.   EVEN IF PLAINTIFF HAS STANDING, DEFENDANTS ARE ENTITLED TO
       SUMMARY JUDGMENT IN THIS MATTER AS LIM'S WCAG 2.1, LEVEL
       AA, COMPLIANT WEBSITE PROVIDES REASONABLE WEBSITE
       ACCOMMODATIONS UNDER THE ADA AS A MATTER OF LAW ......................... 12

  III.   PLAINTIFF HAS PROVIDED ZERO EVIDENCE IN ADMISSIBLE
       FORM EVIDENCING THAT HE IS ENTITLED TO SUMMARY
       JUDGMENT RENDERED IN HIS FAVOR AS A MATTER OF LAW .......................... 17

CONCLUSION ....................................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**<u>Case</u>**                                                                          **<u>Page</u>**

<u>Adickes v. S.H. Kress & Co.</u>,
   398 U.S. 144 (1970)................................................................................17

<u>Brintley v. Aeroquip Credit Union</u>,
   936 F.3d 489 (6th Cir. 2019)................................................................11

<u>Calcano v. Swarovski North America Ltd.</u>,
   36 F.4th 68 (2d Cir. 2022)............................................................ passim

<u>Celotex Corp. v. Catrett</u>,
   477 U.S. 317 (1986)................................................................................17

<u>Citizens Bank of Clearwater v. Hunt</u>,
   927 F.2d 707 (2d Cir. 1991)..................................................................17

<u>City of Los Angeles v. Lyons</u>,
   461 U.S. 95 (1983)..................................................................................5

<u>Cook v. Arrowsmith Shelburne, Inc.</u>,
   69 F.3d 1235, 1240-41 (2d Cir. 1995)................................................20

<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,
   509 U.S. 579, 589 (1993)......................................................................14

<u>Delacruz v. Jamba Juice Company</u>,
   2020 WL 3250392 (SDNY 2020)..........................................................6

<u>Delacruz v. Yankee Candle Company, Inc.</u>,
   No. 19 Civ. 10999 (AT), 2021 WL 1198567 at *1-2 (SDNY Mar. 30, 2021)....................5, 6

<u>Del-Orden v. Bonobos, Inc.</u>,
   No. 17 Civ. 2744 (PAE), 2017 WL 6547902 at *13 (SDNY Dec. 20, 2017)......................16

<u>Dominguez v. Banana Republic, LLC</u>,
   613 F.Supp.3d 759, 762 (SDNY 2020) ...................................... passim

<u>Gonzalez v. Pacers Running, LLC</u>,
   No. 23-cv-7808 (LJL), 2024 WL 1513753 (SDNY Apr. 8, 2024) ................20

<u>Jaramillo v. Weyerhaeuser Co.</u>,
   536 F.3d 140 (2d Cir. 2008)..................................................................17

<u>Loadholt v. Dungarees, Inc.</u>,
   No. 22-CV-4699 (VEC), 2023 WL 2024792 (SDNY 2023) .................................8

<u>Lujan v. Defenders of Wildlife</u>,
   504 U.S. 555 (1992)..................................................................................5

<u>Marbury v. Madison</u>,
   5 U.S. 137 (1803)..................................................................................11

<u>Matzura v. Red Lobster Hospitality LLC</u>,
   No. 19-cv-9929 (MKV), 2020 WL 3640075 at *3 (SDNY July 6, 2020).....................4, 5, 9

<u>NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.</u>,
   693 F.3d 145, 156 (2d Cir. 2012)............................................................7

<u>Restivo v. Hessemann</u>,
   846 F.3d 547, 575-76 (2d Cir. 2017).....................................................14

<u>Roberts v. Royal Atl. Corp.</u>,
   542 F.3d 363, 368 (2d Cir. 2008) ..........................................................20

<u>Rodriquez v. Bitchin' Inc.</u>,

No. 152619/2023, 2024 WL 1956408 at *2 (New York Sup. Ct. May 3, 2024) ................19
Scotto v. Almenas,
        143 F.3d 105 (2d Cir. 1998) ................................................................................17
Sicom S.P.A. v. TRS Inc.,
        168 F.Supp.3d 698 (SDNY 2016) .......................................................................13
Spokeo, Inc. v. Robins,
        578 U.S. 330 (2016) ..................................................................................... passim
St. Amour v. Lawrence & Mam'l Corp.,
        No. 3:09 cv 01055 (JAM) (D. Conn. Sept. 12, 2016).........................................20
Sullivan v. BDG Media, Inc.,
        146 N.Y.S.3d 395 (New York Sup. Ct. 2021) .....................................................19
TransUnion LLC. v. Ramirez,
        594 U.S. 413 (2021) ..................................................................................... passim
United States v. Romano,
        794 F.3d 317, 330 (2d Cir. 2015) .......................................................................14
Weinstock v. Columbia Univ.,
        224 F.3d 33 (2d Cir. 2000) .................................................................................17
Weiss v. La Suisse, Societe D'Assurances Sur La Vie,
        293 F.Supp.2d 397 (SDNY 2003) .......................................................................18

## Statutes

28 U.S.C. §1746 ...........................................................................................................13, 14
42 U.S.C. §12182 ...............................................................................................................12
FRCP §12.................................................................................................................4, 10, 21
FRE §801 ......................................................................................................................13, 14
FRE §702 ...........................................................................................................................14
FRE §801(d)(2)(B).........................................................................................................13, 14
FRE §803(6).................................................................................................................13, 14
N.Y. Exec. Law §296 ..........................................................................................................18

## Regulations

28 C.F.R. §36.302 ...........................................................................................................9, 12
28 C.F.R. §36.303(a).........................................................................................................15
N.Y.C. Administrative Code §8-107 ....................................................................................18

## Other

IAAP, Certified Professional in Accessibility Core Competencies,
https://www.accessibilityassociation.org/cpacc (last visited May 26, 2025)................................15

<u>**STATEMENT OF FACTS**</u>
<u>**IN REPLY AND OPPOSITION**</u>

Plaintiff has made striking admissions and denials in response to Defendants' Statement of Material Facts that should not go unnoticed by this Court as they evidence not only that Plaintiff does not appear to have two prosthetic eyes as he has claimed throughout this and 193 other lawsuits, but also that Plaintiff does not appear to have any visual impairment other than needing reading glasses, which is not a disability protected under the ADA. *(See Plaintiff's Memorandum of Law in Opposition and Support, pp. 1 and 5, attached to Plaintiff's moving papers at ECF 57; Declaration of Manuel Delacruz, ¶¶2 and 14, attached to Plaintiff's moving papers at ECF 57-4; Declaration of Dr. Marie Christine Panganiban, ¶7, attached to Plaintiff's moving papers at ECF 57-8; Plaintiff's Counter Statement of Material Facts, ¶¶ 9-10, 12-14, attached to Plaintiff's Moving Papers at 57-1; Plaintiff's Statement of Material Facts, ¶¶33-36, attached to Plaintiff's Moving Papers at ECF 57-2)*

Indeed, Plaintiff admits that the Facebook page found at https://www.facebook.com/manuel.delacruz.75436 is, in fact, Plaintiff's Facebook page ---a page that contains the numerous selfies of Plaintiff dancing with a partner on a dance floor with no dark glasses or prosthetic devices, similarly dancing freely in his living room without any prosthetic devices and also not bumping into nearby furniture, looking right at a nearby videographer while pointing to someone else similarly with no dark glasses or prosthetic devices, **behind the wheel of a car**, holding car keys, with reading glasses hanging from his collar, <u>**posting photographs to his Facebook page while operating a motor vehicle**</u>, and posing in his MTA mechanic's uniform while at work at the MTA garage. *(See Photographs of Plaintiff's Facebook Page, attached to Defendants' Moving Papers as Exhibit E and hereto as Exhibits "N" and "O"; Plaintiff's Counter Statement of Material Facts, ¶¶1, 9, 10, 12, 13 & 14, attached to*

*Plaintiff's Moving Papers at 57-1; Plaintiff's Statement of Material Facts, ¶¶33-36, attached to Plaintiff's Moving Papers at ECF 57-2; Declaration of Manuel De La Cruz, attached to Plaintiff's Moving Papers ¶14)*

Exhibit E has several specific images that call into question the truth of Plaintiff's disability. Specifically, Plaintiff contends that he is not only blind, but also has two prosthetic eyes. *(See Plaintiff's Memorandum of Law in Opposition and Support, pp. 1 and 5, attached to Plaintiff's moving papers at ECF 57; Declaration of Manuel Delacruz, ¶2, attached to Plaintiff's moving papers at ECF 57-4; Declaration of Dr. Marie Christine Panganiban, ¶7, attached to Plaintiff's moving papers at ECF 57-8)* However, this is not and cannot be the case, as Plaintiff can clearly be seen with reading glasses in several photos on his public Facebook profile which he admits are selfies. *(See Photographs of Plaintiff wearing Reading Glasses, attached hereto as Exhibit N, which are blown up versions of the photographs previously attached to Defendants' moving papers as pp. 2 and 14 of Exhibit E)* Plaintiff argues that these glasses are merely "sunglasses" and "not reading glasses", equally preposterous claims not only because the glasses in these pictures are clearly reading glasses, but more even more preposterous as someone with two prosthetic eyes would not have a need for either kind of glasses. *(See Declaration of Manuel De La Cruz ¶14; see e.g. Healthline: What Seeing People Should Know About Blind People Wearing Sunglasses, available at https://www.healthline.com/health/eye-health/why-do-blind-people-wear-sunglasses)*[1]

---

[1] It is a common misconception that people with blindness have no vision. Only 15 percent of people with eye disorders have total blindness. The other 85 percent can see at least a limited amount. As such, people with blindness wear dark glasses to protect their eyes from UV rays to prevent further degeneration, to protect against light sensitivity, to prevent particles from entering into their eyes, and to aid them in seeing better. Those with two prosthetic eyes do not require dark glasses as they have no eyes and, therefore, do not have photosensitivity a/k/a photophobia or the need to protect their eyes from UV rays.

Plaintiff also admits that the several selfies on his Facebook page holding car keys and behind the wheel of a motor vehicle are the Plaintiff, but contends that he was not operating the vehicle, but rather merely sitting behind the driver's seat. This becomes ever more preposterous as Plaintiff does not deny that there are other pictures on that same Facebook page which he posted while clearly in the driver's seat and operating a motor vehicle about traffic on the BQE and a traffic jam on another unidentifiable highway. *(See Blown up photographs of Plaintiff driving from his Facebook page, attached hereto as Exhibit O and previously attached to Defendants' moving papers as part of Defendants' Exhibit E as pp. 40 & 82)*

Plaintiff contends that he does not work for the Metropolitan Transportation Authority ("MTA") and that he relies upon Social Security Disability Insurance ("SSDI"), despite Plaintiff not denying having posted several photographs of himself at work at the MTA wearing an MTA mechanics uniform. *(See Declaration of Manuel De La Cruz ¶¶7 & 10, attached to Plaintiff's moving papers at ECF 57-4; Blown up photographs of Plaintiff at work, attached hereto as Exhibit "P" and previously attached to Defendants' moving papers as part of Defendants' Exhibit E, pp. 5 and 16; see also printout from his public record on* GovSalaries.com, *attached hereto as Exhibit "Q")*

Finally, while Plaintiff denies that the Facebook page contained at https://www.facebook.com/manuel.delacruz.3110 and attached to Defendants' moving papers as Exhibit F, is his Facebook page, this claim is preposterous as the photographs contained on this Facebook page are of the same person who Plaintiff admits is him and also depicts the same paramour and children as are pictured on what is admittedly his Facebook page. Defendants again find it important to question how someone who allegedly "has two prosthetic eye balls" can maintain a Facebook page or has the ability to ascertain that one page belongs to him while

the other--- with photographs of the same person, paramour and children ---does not. *(See Plaintiff's Memorandum of Law in Opposition and Support, pp. 1 and 5, attached to Plaintiff's moving papers at ECF 57)* It is also important to note that Plaintiff publicly posted his cellular phone number on this Facebook page and that is the same cellular phone number that belongs to Plaintiff according to his TransUnion Report attached to Defendants' moving papers as Exhibit G. *(Compare p. 1 of Exhibit G with the April 9, 2011 entry on p. 8 of Exhibit F, both attached to Defendants' moving papers)*

## ARGUMENTS

I. **PLAINTIFF'S AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE HE CANNOT DEMONSTRATE A CONCRETE, PARTICULARIZED, AND FORWARD LOOKING INJURY-IN-FACT**

This Court must dismiss Plaintiff's First Amended Complaint because Plaintiff has failed to establish standing to assert any claims under the Americans with Disabilities Act ("ADA") and, as such, Plaintiff's non-ADA claims must likewise fail. *See FRCP 12(b)(1); Cortlandt St. Recover Corp. v. Hellas Telecomm.*, 790 F.3d 411, 416-417 (2d Cir. 2015); *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008); *Matzura v. Red Lobster Hospitality LLC*, 2020 WL 3640075 at *2 (SDNY 2020); *Mendez v. Apple Inc.*, 2019 WL 2611168, at *4 (SDNY 2019) (**"New York State and City claims are governed by the same standing requirements as the ADA."**); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

Plaintiff does not deny that it is his burden of establishing that he has standing to bring this suit. *See Spokeo, Inc., supra* at 337. Plaintiff similarly does not deny that, to have standing, he must plead facts in non-conclusory form that establish that (1) he has suffered an injury in fact that is concrete and particularized which actual or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct complained of which is fairly

4

traceable to the defendant; and (3) it must be likely that the injury will be redressed by a favorable decision. _Lujan v. Defenders of Wildlife_, _504 U.S. 555, 560-561 (1992)_.  Plaintiff further acknowledges that Second Circuit precedent requires that the injunctive relief that Plaintiff is seeking herein is only available where "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location." _Kreisler v. Second Ave. Diner Corp._, _731 F.3d 184, 187-188 (2d Cir. 2013) (per curiam);_ _Dominguez v Banana Republic, LLC_, _613 F Supp3d 759, 765 (SDNY 2020), aff'd sub nom._ _Calcano v Swarovski N. Am. Ltd._, _36 F4th 68 (2d Cir 2022)_.  Plaintiff finally acknowledges that the "intent to return" element is critical and that the Plaintiff lacks standing to sue where his Complaint merely asserts a vague intent to return rather than a "real or immediate threat of injury".  _Nicosia v. Amazon.com, Inc._, _834 F.3d 220, 239 (2d Cir. 2016), quoting_ _City of Los Angeles v. Lyons_, _461 U.S. 95, 111-112 (1983)_.

Plaintiff could not deny the foregoing as several complaints in other matters commenced by Plaintiff's counsel on behalf of Plaintiff and other litigants have been dismissed by this Court due to "copy and paste" pro forma complaints like the one in the case at bar alleging supposed conclusory, unspecific imminent intent to return, which this Court found as insufficient as a matter of law to evidence standing. _See_ _Matzura_, _supra_ at *3 **(Complaint filed by Gottlieb & Associates dismissed under 12(b)(1) and (6) with the Court noting that "those who live by the photocopier shall die by the photocopier" where they "fail[] specifically to assert any concrete injury")**; _see_ _also_ _Delacruz v. The Yankee Candle Company, Inc._, _2021 WL 1198567 (SDNY 2021)_ **(Complaint filed by Gottlieb & Associates on Plaintiff's behalf dismissed under 12(b)(1)**

*and (6));* <u>*Tucker v. Denny's Corporation*</u>*, 2021 WL 4429220 (SDNY 2021)* *(**Complaint filed by*

*Gottlieb & Associates dismissed under 12(b)(1) and (6)**);* <u>*Dominguez v Banana Republic, LLC*</u>*,*

*613 F Supp3d 759, 765 (SDNY 2020), aff'd sub nom.* <u>*Calcano v Swarovski N. Am. Ltd.*</u>*, 36 F4th*

*68 (2d Cir 2022)* *(**Complaint filed by Gottlieb & Associates dismissed under 12(b)(1) and (6)**);*

<u>*Delacruz v. Jamba Juice Company*</u>*, 2020 WL 3250392 (SDNY 2020)* *(**Complaint filed by*

*Gottlieb & Associates on Plaintiff's behalf dismissed under 12(b)(1) and (6)**)).*

## A.  <u>PLAINTIFF'S ALLEGED INFORMATIONAL INJURY IS NOT CONCRETE</u>

Like all the prior actions brough by Plaintiff and/or his counsel, Plaintiff cannot deny in

the case at bar that he has failed to allege a concrete injury as he has failed to sufficiently plead

an intent to return. *See* <u>*Delacruz v Jamba Juice Co.*</u>*, supra at \*1.*

Indeed, as this Court stated when dismissing Plaintiff's complaint in <u>*Delacruz v Jamba*</u>

<u>*Juice Co.*</u>*, supra at \*1, "*intent-to-return inquiry, as explained in Banana Republic, is a 'highly

fact-sensitive inquiry that incorporates a range of factors' such as 'the frequency of the plaintiff's

past visits' and 'the proximity of the defendant's services, programs, or activities to the plaintiff's

home' along with any other factors 'relevant to the calculation' including the plaintiff's

'occupation or demonstrated travel habits.'"  As stated by this Court in <u>*Delacruz v Jamba Juice*</u>

<u>*Co.*</u>*, supra at \*1,* merely asserting conclusory, generic allegations that Plaintiff intends to make

an immediate purchase once the barriers are removed is insufficient to establish standing.

This Court similarly dismissed this Plaintiff's Complaint in <u>*Delacruz v. The Yankee*</u>

<u>*Candle Company, Inc.*</u>*, supra,* finding that this Plaintiff failed to establish standing by merely

asserting that he supposedly lived in close proximity to the Yankee Candle Company store in

Queens and that he supposedly intended to make a purchase once the barriers to access were

removed.

In furtherance of this principle, this Court in *Matzura, supra at \*3,* dismissed another complaint filed by Plaintiff's counsel finding that the wholly conclusory allegations in the complaint that they intended to make a purchase from the defendant in that case once the barrier was removed was insufficient to establish standing under the ADA as the plaintiff failed to provide adequate non-conclusory factual allegations demonstrating a plausible intent to return to a Red Lobster restaurant. *(quoting NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 156 (2d Cir. 2012)* **("those who live by the photocopier shall die by the photocopier where they fail specifically to assert any concrete injury.")** *(citations omitted and cleaned up)*. Similarly, in *Dominguez v. Banana Republic, LLC, 613 F.Supp.3d 759, 762 (SDNY 2020),* this Court held that "generic, conclusory statements are plainly insufficient" and that the plaintiff "must provide the Court with *some* specific facts demonstrating that it is likely he will be injured by [defendant] in [the] future". This Court went onto state that "the more generic the complaint, the more easily it can be repurposed for use against different defendants. But the greatest asset of copy-and-paste litigation can also be its greatest weakness" and that "those who live by the photocopier shall die by the photocopier". *Id, quoting Mendez, surpa at 4.*

In this action, Plaintiff similarly makes the conclusory, generic claim that he intends to immediately return to Defendants' website to purchase meal replacements shakes as soon as the access barriers are removed, which is likewise plainly insufficient to establish standing as this Court has previously held when dismissing other complaints filed by this Plaintiff and his counsel. *(See First Amended Complaint ¶49, attached to Defendants' moving papers as Exhibit I)* Plaintiff also alleges that he intends to frequent the bariatric surgery practice without asserting why he cannot do so without any alterations to the website and while also admitting that he is not overweight, has no use for bariatric services and has no necessity to lose weight by consuming

weight loss shakes. Thus, Plaintiff has no legitimate reason to browse LIM's website in search of products intended solely for bariatric patients. Indeed, the below is a direct quote from LIM's website as quoted in ¶43 of Plaintiff's FAC:

> "Used as a meal replacement for weight loss. With 27 grams of protein and only 150 calories per serving, **this is an easy way to get in all of your <u>post surgery</u> protein requirements.** Tastes great, nutritionist approved, and packed with nutrients." and "your **one stop for all of the <u>bariatric</u> recipes and foods you need**." (Emphasis added)

Plaintiff's stomach has not undergone the strenuous surgical procedure for him to have an intention or need to buy LIM's meal replacement shakes. Additionally, Plaintiff's argument is squarely defeated by the very cases he relies on. The tester plaintiff in *Loadholt v. Dungarees, Inc.,* No. 22-CV-4699 (VEC), 2023 WL 2024792 (SDNY 2023), who is blind, attempted to buy belts and a jacket from defendant, who is an online retail store, but was unable to because he could not obtain necessary information, including the products price, size and description. The tester plaintiff alleges that once the informational harm is remedied, he intends to return to the website. *Id. at *1.* The court dismissed the tester plaintiff's complaint and held that the complaint fails to allege a sudden need or want for the products. *Id. at *2.* The court of *Loadholt* relied upon the binding Second Circuit decision of *Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68 (2d Cir. 2022).*

This the Second Circuit court in *Calcano* ruled that the tester plaintiff needed to describe, *inter alia,* detail what items they purchased in the past, why they want to purchase particular goods now, and why they would do so "immediately" when those goods become accessible in order to "nudge [plaintiffs'] claims across the line from conceivable to plausible". *Loadholt, supra at *2 (see parenthetical).* Plaintiff has not and cannot have an immediate intention to purchase LIM's post-surgery shakes. Just because Plaintiff thinks a surgery shake looks "tasty"

8

does not satisfy the want or need for such a shake. Thus, Plaintiff's Complaint fails to establish standing as a matter of law.

Plaintiff admits that he has never attempted to contact LIM's Accessibility Manager to gain further information regarding the services rendered by Plaintiff. *(See Plaintiff's Memo of Law ¶15)* Plaintiff instead argues that this is not a requirement of the ADA. *Id.* However, this is not the case as LIM not required to guarantee full use of its website beyond what is reasonable. Indeed, *28 C.F.R. §36.302(a)* merely requires a reasonable public accommodation when necessary to afford the same goods and privileges to individuals with disabilities. Absent of any other statutory or regulatory requirement as is here, Defendants are free to create their own reasonable accommodation and an accessible help line in addition to having a Certified WCAG 2.1, Level AA Compliant website has been should be found as more than reasonable.

Indeed, this Court stated in *Dominguez, supra* at 773:

> "A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad."); see also Camarillo, 518 F.3d at 157 ("While restaurants are not necessarily required to have on hand large print menus that [plaintiff] would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who ... are legally blind.")." *see also 28 CFR § 36.303(c)(1)(ii) (emphasis added); see also 28 C.F.R. Pt. 36, App'x C ("**The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad."); Camarillo v. Carrols Corp., 518 F.3d 153, 157 (2d. Cir. 2008) ("While restaurants are not necessarily required to have on hand large print menus that [plaintiff] would be able to read, they are required to ensure that their menu options are effectively communicated to individuals who ... are legally blind.")**.*

9

In _Dominguez, supra at 773-774,_ in finding grounds to dismiss also under _FRCP 12(b)(6),_ this Court held that the plaintiff was not denied access to an auxiliary aid or service as the defendant was not required to provide plaintiff with the accommodation that he requested and that the plaintiff could have simply inquired about what goods were available when he spoke with the customer service representative on the phone which plaintiff failed to avail himself of, thus, giving himself a self-inflicted injury.

Had Plaintiff in the case at bar had taken the time to contact LIM's Accessibility Manager, he would have learned more about that the vitamins and supplements offered on LIM's website and would have similarly been advised that they were intended solely for patients of the practice to be utilized after bariatric surgery. Plaintiff failing to avail himself of this information by contacting LIM's Accessibility Manager was a self-inflicted injury as he does not deny that there was no barrier preventing him from placing this call.

Based on the foregoing, Plaintiff has failed to establish concreteness pursuant to Article III standing and Plaintiff's FAC fails to state a claim upon which relief may be granted, warranting dismissal under _FRCP 12(b)(1)_ and _(6)._

## B.  PLAINTIFF HAS NOT SUFFERED A PARTICULARIZED INJURY

Plaintiff has failed to argue, allege, oppose, or otherwise state that his injury is particularized. Therefore, he has not suffered a particularized injury to represent a class.

Plaintiff concedes that, to demonstrate a personal stake in the matter, Plaintiff "must be able to sufficiently answer the question: What's it to you?" _TransUnion LLC. v. Ramirez, 594 U.S. 413, 436 (2021) (internal quotation marks and citation omitted)._ "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" _Spokeo, Inc., supra at 339 (citation omitted)._ The province of the court "is, solely, to decide the rights of

individuals" and the party seeking review must be among the injured. *TransUnion LLC*, *supra at 436*, quoting *Marbury v. Madison*, 5 U.S. 137 (1803).

As Plaintiff has failed to argue that he has suffered a particularized harm, section I. B. of Defendants' motion should be submitted unopposed. Plaintiff bears the burden of establishing Article III standing, and his failure to even argue that he has a particularized harm warrants dismissal of the case. *See TransUnion LLC*, *supra*.

However, even if Plaintiff argued a particularized harm, he would still come short of Article III. Plaintiff is not a candidate for bariatric services and has no desire or need to receive bariatric services from LIM as disclosed by his counsel and as evidence by his Facebook page as Plaintiff is not overweight. Plaintiff, thus, has no stake in the matter because any risk of future harm is not distinct to him. Without a particularized injury, Plaintiff lacks the personal stake necessary to invoke the jurisdiction of this Court. Because Plaintiff has no desire to seek bariatric services from Defendants, he is merely a passerby. As articulated in the Sixth Circuit, standing "aims to prevent the federal judiciary from becoming a vehicle for the vindication of the vague interests of concerned bystanders. Those who merely pursue websites that they cannot benefit from have less in common with bystanders than they do with [a] passersby." *See Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 494 (6th Cir. 2019). In short, Plaintiff concedes that he cannot answer the question "What's it to you?" as required by the U.S. Supreme Court precedent set in *TransUnion LLC*, *supra at 436*.

Accordingly, because Plaintiff has not suffered a particularized injury, he lacks standing under Article III. His inability to establish an individual harm also precludes him from serving as an adequate class representative, as he cannot demonstrate that he has a direct stake in the litigation beyond a general interest in enforcing the law.

11

**II.    EVEN IF PLAINTIFF HAS STANDING, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THIS MATTER AS LIM'S WCAG 2.1, LEVEL AA, COMPLIANT WEBSITE PROVIDES REASONABLE WEBSITE ACCOMMODATIONS UNDER THE ADA AS A MATTER OF LAW**

Defendants had moved this Court seeking Summary Judgment in their favor regarding the Plaintiff's ADA claims. Plaintiff's opposition only addresses Defendants' Motion to Dismiss and fails to address Defendants Motion for Summary Judgment. Plaintiff similarly fails to present evidence in admissible form demonstrating that triable issues of material fact remain that preclude this Court from rendering judgment in favor of defendants as a matter of law. As such, Defendants' Motion for Summary Judgment should be granted without opposition. To the extent that this Court considers Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion as opposition to Defendant's motion, it is similarly insufficient to defeat Defendants motion as Plaintiff similarly fails to present any evidence inadmissible form in support of his motion.

As previously provided, Title III requires reasonable modifications to policies, practices, or procedures, when necessary, to afford the same goods, services, facilities, privileges, and/or advantages to an individual with disabilities. *42 U.S.C. §12182(b)(2)(A)(ii); see also 28 C.F.R. §36.302(a)*. Unless such modification or accommodation would fundamentally alter the nature of the goods, services, facilities, privileges, or advantages. *Id.*  A public accommodation includes taking the necessary steps to ensure that no "individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would . . . result in an undue burden . . . [or] significant difficulty or expense. *28 C.F.R. § 36.303(a)*.   Examples of an auxiliary aid and/or service include a "[q]ualified readers; taped texts; audio recordings; [b]railled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print

materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision[.]" *Id* at (b)(2).

Plaintiff has failed to submit any evidence in admissible form to defeat Defendants' Motion for Summary Judgment. Indeed, Plaintiff's Declaration is not in conformity with *28 U.S.C. §1746* and existing case law since there is no Certificate of Translation as to who translated the document from English to Spanish and/or read the document to Plaintiff to ensure that it was accurate before he signed the same. *See* *Sicom S.P.A. v. TRS Inc.,* *168 F.Supp.3d 698, 709 (SDNY 2016) (citation omitted)* **("If the declarant himself does not speak and read English . . . the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing.")**. Indeed, it is alleged in the supposed medical records presented that Plaintiff cannot understand English so the examination was performed through a translator, yet, the Declaration of Manuel Delacruz is devoid of any indication that the document was translated to him from English to Spanish before he executed the same. *(See Declaration of Manuel De La Cruz ¶1, attached to Plaintiff's moving papers at ECF 57-4; Medical Records, attached to Plaintiff's moving papers as Exhibit H and I; see also Plaintiff's Facebook Page which had to be translated by Facebook from Spanish to English as noted thereon, attached to Defendants' moving papers as Exhibit E)*

In opposing Defendants' motion and in support of his own cross-motion, Plaintiff submits two audit reports—neither of which is admissible nor can be considered by this court. Plaintiff's Exhibit G contains an alleged audit by PowerMapper. This document is complete and utter hearsay, and the contents of which cannot be admitted as they violate *FRE §801* and/or do not comply with *FRE §803(6)*. The second audit was conducted by ADASure and is attached to

13

Plaintiff's moving papers as Plaintiff's Exhibit E. The declarant, Michael McCaffrey, is the supposed expert whose company, ADASure, conducted the audit. Again, the document has failed to be properly authenticated and violates *FRE §801* and/or does not comply with *FRE §803(6)*.

Furthermore, Michael McCaffrey's declaration is inadmissible. Pursuant to *28 U.S.C. §1746*, when a declaration is unsworn, the written statement <u>must be submitted under penalty of perjury</u>—which Michael McCaffrey's declaration is not. Michael McCaffrey's declaration and his supporting audit are further inadmissible testimony as they violate *Daubert*.

To qualify as an expert, the proponent must demonstrate "to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *FRCP §702*. Section 702 "assigns to district courts the gatekeeper function—"ensur[ing] that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Restivo v. Hessemann, 846 F.3d 547, 575-76 (2d Cir. 2017) (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993))*. "Under *Daubert*, factors relevant to determining reliability include 'the theory's testability, the extent to which it "has been subjected to peer review and publication," the extent to which a technique is subject to 'standards controlling the technique's operation," the "known or potential rate of error," and the "degree of acceptance" within the "relevant scientific community."'" *Id. (citing United States v. Romano, 794 F.3d 317, 330 (2d Cir. 2015) (quoting Daubert, supra at 593-94))*.

Michael McCaffrey's declaration completely forgoes the requirements of *FRCP 702*. This court is left to guess the means and methods by which he conducts his audits. It is further

14

unknown if his methods are peer reviewed, the standards of controlling the techniques of operations, and the potential rates of error. As such, who is Michael McCaffrey to conduct an audit of LIM's website when he fails to disclose how his procedures comply with Web Content Accessibility Guidelines ("WCAG"), does not disclose his methods of conforming with the WCAG, and certifications held or required for the WCAG.

There is also nothing in Michael McCaffrey's attached resume that could possibly qualify him or show that he has an understanding of auditing websites. Defendants have no issue considering him as an expert in marketing if that is what Plaintiff's desires; however, a background in website auditing he has not established. In fact, Michael McCaffrey is actually in violation of his Certified Professional in Accessibility Core Competencies ("CPACC") certification. The CPACC Candidate and Certification Handbook, which is available to the public on the CPACC's website,[2] specifically states that this certification does not permit its holder to "personally design, implement, or **evaluate** the technical details of accessible solutions." *(See Candidate and Certification Handbook, pp. 19, attached hereto as Exhibit "R")* Michael McCaffrey's audit and evaluation of the technical details of LIM's website and those of similarly situated defendants demonstrates a clear willingness to exceed the scope of his permitted role and expertise.

To continue with Michael McCaffrey's untrustworthiness, he declares that "[e]very court has found the audits of ADASure to be reliable to prove that the utilization of AccessiBe Widgets [does] not render the websites to be accessible by blind consumers." *(See Declaration of Michael McCaffrey ¶12)* This is a blatantly false statement. The two cases Michael McCaffrey cites were not conducted by ADASure but by another company, Forensic Data Services ("FDA"). *(See*

---

[2] *See* IAAP, *Certified Professional in Accessibility Core Competencies*, https://www.accessibilityassociation.org/cpacc (last visited May 30, 2025).

*Declarations by the CEO of FDS, attached hereto as Exhibit "S" & "T"*)  Plaintiff cites no case

that supports ADASure's self-reported promotion. In fact, the court of <u>*Del-Orden v. Bonobos,*</u>

*Inc., No. 17 Civ. 2744 (PAE), 2017 WL 6547902 at \*13 (SDNY Dec. 20, 2017),* explicitly found

that the audit by ADASure and its supporting declaration by Michael McCaffrey were ***not*** in

admissible form. Although the court denied the defendant's motion to dismiss, it was because

defendant brought its motion prior to filing its answer. <u>*Id*</u>. Whereas here, Defendants bring their

motion after discovery had concluded. <u>***See Id***</u>. **("It will be for later in this litigation—perhaps at**

**the point of summary judgment motions . . .—for the parties to brief the standards by which**

**website accessibility to the visually impaired is to be measured.")**.

Furthermore, the Federal Trade Commission's Decision and Order attached to Plaintiff's

moving papers as Exhibit Q does nothing to undermine or disprove that LIM's website is readily

accessible for the blind. The order explicitly applies to statements made by Accessibe as they

pertain to **artificial intelligence**, not of the usability of the widget itself. *(<u>See</u> Plaintiff's Exhibit*

*Q pp. 3)*  This does not diminish Accessibe's assurance that LIM's website is WCAG 2.1 AA

compliant.

Moreover, as noted above, a place of public accommodation can choose among various

alternatives as long as the result is effective communication and is not required to provide the

accommodate desired by the plaintiff. <u>*Dominguez, supra*</u> at 773. As such, it is respectfully

submitted that the accessibility widget coupled with the Accessibility Manager offered by LIM is

more than sufficient to satisfy the ADA as a matter of law.

Furthermore, if the technology required to accurately describe pictures has not yet been

fully developed or refined for integration into AccessiBe's program, and Defendants have

achieved WCAG 2.1, level AA, compliance without it, they cannot be expected to pioneer the

next technological breakthrough in screen reading software solely to meet an unreasonable compliance standard sought by Plaintiff. *See e.g. Calcano, supra* **(Plaintiff failed to allege injury in fact to establish Article III standing as Title III of the ADA does not require a business to incur the expense of fabricating braille gift cards to accommodate blind consumers)**.

As there is no triable issue of material fact that LIM's website is compliant with Title III of the ADA by being certified as WCAG 2.1, level AA, compliant, Defendants are entitled to summary judgment granted in their favor and against Plaintiff. Furthermore, Plaintiff has failed to adequately allege facts to be entitled to summary judgment in his favor.

### III.     PLAINTIFF HAS PROVIDED ZERO EVIDENCE IN ADMISSIBLE FORM EVIDENCING THAT HE IS ENTITLED TO SUMMARY JUDGMENT RENDERED IN HIS FAVOR AS A MATTER OF LAW

A party may move for Summary Judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *FRCP §56(a)*. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)*. The moving party may satisfy this burden by "pointing out the absence of evidence to support the non-movant's claims." *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir. 1991), citing to *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

As noted above, Plaintiff's Motion for Summary Judgment must fail as he presents no evidence in admissible form to prove that no issues of material fact remain that require a trial. Indeed, as noted in Point II, supra, Plaintiff merely attaches his supposed Declaration with no Certificate of Translation of the individual who read the Declaration to the Plaintiff before he signed it or who translated the document from English to Spanish, the Plaintiff's native language, before he signed the same. As such, this Declaration must be disregarded by the Court. While Defendants laid the foundation for the documents submitted in support of their motion as

17

business records, Plaintiff has failed to lay the foundation to allow this Court to consider any of the Exhibits attached to his moving papers, all of which constitute inadmissible hearsay and Plaintiff has asserted no exceptions to the hearsay rule that would allow this Court to consider the same. As the Plaintiff has presented no evidence to this Court in admissible form in support of his Motion for Summary Judgment, the same must be denied.

## CONCLUSION

Accordingly, Defendants respectfully request that this Court grant Defendants' motion to dismiss Plaintiff's Amended Complaint under *FRCP 12(b)(1)* and *(b)(6)* be granted as Plaintiff lacks Article III standing to sue herein as he has failed to assert any concrete, particularized or forward-looking injury in fact or, in the alternative, that this Court award summary judgment in favor of Defendants and against Plaintiff as LIM'S website is fully compliant with Title III of the ADA. Furthermore, Plaintiff's motions for summary judgment should be denied because he has failed to proffer sufficient facts or evidence in admissible form to be entitled to summary judgment in his favor.

Dated: Uniondale, New York
         May 30, 2025

SAHN WARD BRAFF COSCHIGNANO PLLC
*Attorneys for Defendants*

By: _____
         DANIELE D. DE VOE
333 Earle Ovington Boulevard, Suite 601
Uniondale, New York 11553
(516) 228-1300