UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANUEL DE LA CRUZ a/k/a EMANUEL DELACRUZ a/k/a
MANUEL DELACRUZ a/k/a MANNY DELACRUZ, ON
BEHALF OF HIMSELF AND ALL OTHER PERSONS
SIMILARLY SITUATED,

                                                    Plaintiffs,

                        -against-

NEW YOU BARIATRIC GROUP, LLC AND
LONG ISLAND MINIMALLY INVASIVE
SURGERY, P.C.,

                                                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  10/28/2025

**23-CV-6405 (PAE) (KHP)**

**REPORT AND
RECOMMENDATION
ON
MOTION TO DISMISS,
CROSS MOTIONS FOR
SUMMARY JUDGMENT, AND
OPINION ON REQUEST FOR
HEARING ON SANCTIONS**

**TO: HONORABLE PAUL A. ENGELMAYER, United States District Judge
FROM: KATHARINE H. PARKER, United States Magistrate Judge.**

        Plaintiff Manuel Delacruz ("Plaintiff"), on behalf of himself and others similarly situated,

brings this action against New You Bariatric Group, LLC and Long Island Minimally Invasive

Surgery, P.C. ("Defendants") asserting claims under Title III of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12181 et seq., N.Y. Executive Law § 296 ("NYSHRL"), and N.Y.C.

Administrative Code § 8-101 et seq. ("NYCHRL"), for discrimination based on disability, by

constructing and maintaining a commercial website that is not accessible to individuals who are

blind and/or visually impaired.   Before the Court for a Report and Recommendation are

Defendants' Motion to Dismiss and/or for Summary Judgment, Plaintiff's Cross-Motion for

Summary Judgment, and Defendants' request for a hearing on sanctions.  (ECF Nos. 31, 57)  For

the reasons stated below, I respectfully recommend that Defendants' motion be GRANTED and

that Plaintiffs' cross-motion be DENIED as MOOT.  Additionally, Defendants' request for a

hearing on sanctions is DENIED.

**BACKGROUND**

1. **Factual Background**[1]

Although there are virtually no facts that have gone undisputed in this action, the Court constructs the following summary of facts based on both parties' submissions:

a. **The Parties**

Plaintiff attests he is named Manuel Delacruz (ECF Nos. 61-6, 61-7; ECF No. 57-4 ("Delacruz Decl."), at ¶1; ECF Nos. 53, 56) but also goes by the name "Emanuel Delacruz" or "Manny Delacruz." (ECF No. 57-3, at ¶ 3)  Plaintiff is a blind or visually impaired person (Pl. 56.1, at ¶1; ECF No. 57-8 ("Panganiban Decl."), at ¶ 7; ECF No. 61-1), who uses a screen reading software called Job Access With Speech ("JAWS") in order to navigate the internet. (FAC., at ¶ 35)

Defendant Long Island Minimally Invasive Surgery, P.C., doing business as New York Bariatric Group ("LIM"), operates a bariatric medical practice and maintains a public website. (ECF No. 33 ("Garber Decl."), at ¶¶ 1, 5) Defendant New You Bariatric Group, LLC ("New You") provides administrative services to LIM for a fee.  (*Id.,* at ¶ 1)  The website identified in the record is www.bariatric.stopobesityforlife.com <https://perma.cc/HAZ6-NN54> (the "Website").  (Pl. 56.1, at ¶ 2)  The Website includes an online store provided by "New York Bariatric Group" which lists multiple product categories for sale, including meal-replacement shakes, supplements, drink mixes, and snack foods.  (*Id.*, at ¶¶ 4-5)  The Website also functions as a "nexus" to Defendants' retail medical clinics and sales offices, of which there are over 30

---

[1] The facts are taken from the pleadings, Plaintiff's Rule 56.1 Statement ("Pl. 56.1") (ECF No. 57-2), Defendants' Rule 56.1 Statement ("Defs. 56.1") (ECF No. 34), and the exhibits and declarations submitted by the parties, and are presented in the light most favorable to the non-moving party.  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012).

locations in the New York City area. (*Id.*, at ¶¶ 13-14) The Website is open and visible to members of the public (which is how Plaintiff found it) and appears to allow anyone to purchase nutritional products from the shop page. (*Id.*, at ¶¶ 15-17)

### b. Plaintiff's Visits to Defendants' Website and Alleged Barriers

On June 8, 2023, October 30, 2023, and April 27, 2025, Plaintiff visited Defendants' website, where he tried to purchase a meal replacement shake. (*Id.*, at ¶¶ 6-7) Because he is blind, Plaintiff uses a screen reader to read and navigate websites. When Plaintiff visited the website, however, he could not access (via his screen reader) several of its features available for people who are not blind or visually impaired. (*Id.*, at ¶ 6) Specifically, Plaintiff was unable to receive a complete description of the product he intended to purchase and learn the price of said product. (Delacruz Decl., at ¶ 9) He also was not able to checkout. (*Id.*) This difficulty was due, at least in part, to a broken "Accessibility Tools" link, misleading or missing alt-text links for images on the website, and missing navigation instructions. (ECF No. 58 ("McCaffrey Decl."), at ¶ 8; Delacruz Decl., at ¶ 6) Though the Website did not include a statement regarding Defendant's commitment to ADA compliance, it did provide a phone number for customers to call if they required additional assistance with accommodations pursuant to the ADA. (ECF No. 33-1)

Defendants have not formally audited the Website for compliance with the ADA using commonly available accessibility tests (Pl. 56.1, at ¶ 11), and instead, rely on accessiBe's Statement of Service to buttress their position that the website is WCAG compliant, which they contend means it is necessarily ADA compliant. (ECF. No. 33-8) The WCAG stands for Web Content Accessibility Guidelines, which were developed by the World Wide Web Consortium

(W3C), an international community of people in business, academia, and governments who

collaborate to develop international standards for the internet.  Plaintiff, conversely, conducted

two separate compliance tests on the Website.  One was a PowerMapper Audit (ECF No. 57-7)

which revealed 406 pages with accessibility problems – and the other was an ADASure Audit

(ECF No. 57-5) which found several readability issues that could prevent a user with screen

reading software from navigating the Website's 'shop,' accessing information about products,

and completing a purchase.  (McCaffrey Decl., at ¶¶ 8-9)

### c.  Accessibility Measures and Competing Characterizations

Defendants maintain that, at the relevant times, the Website included and continues to

include an accessiBe screen-reader widget; that Plaintiff could use his screen-reading program

on the Website; and that the Website maintains WCAG 2.1 Level AA compliance, as reflected in

Defendants' "Accessibility Statement." [2]  (Defs. 56.1, at ¶¶26, 30-34, 45; ECF No. 33-8)

Defendants further describe accessiBe as among the "best" accessibility programs, stating it

provides ADA "compliance certification" ratings and assists blind users by reading on-screen

text.  (Defs. 56.1, at ¶¶ 27-29)

Plaintiff counters that no qualified person or entity developed the site for accessibility

apart from installing the widget, that accessiBe's widget does not add alternative text to images

and other non-text content on Defendants' site, and that Defendants' "Accessibility Manager"

---

[2] Though Defendants filed the document as a "Certificate of Compliance," it is a misnomer.

4

lacks training on issues blind users frequently encounter.  (Pl. 56.1, at ¶¶ 12, 29-30).  Plaintiff

maintains the site is not ADA compliant on the dates he attempted to use it.  (Pl. 56.1, at ¶ 6)

### d.  Plaintiff's Disability and Defendants' Proffered Social Media Evidence

Defendants contend that Plaintiff is not actually blind.  (Defs. 56.1, at ¶ 16) To support

their claim, Defendants rely on photos and videos they downloaded from two publicly

accessible Facebook profiles of one Emmanuel Delacruz that they attribute to Plaintiff.  (*Id*., at

¶¶ 7-16)  The materials include, *inter alia*, photographs of an individual with reading glasses

hooked to his collar that Defendants say is Plaintiff (ECF No. 33-5, at 2, 14), as well as other

photographs of the same individual holding car keys, in the driver's seat of a motor vehicle, and

in a Metropolitan Transit Authority ("MTA") uniform.  (*Id*., at 5-6, 40, 82)  Defendants also

subpoenaed the MTA and the New York State Department of Motor Vehicles ("DMV") to obtain

more information on the person in the Facebook pictures and submitted a drivers license for

the individual.

Plaintiff says that the Facebook profiles at issue do not belong to him.  (ECF No. 57-1, at

¶ 7)[3]  Rather, he says they are pictures of someone else with the same name.  (*Id*., at ¶ 11)  He

has submitted photographs of his non-driver i.d. card (ECF No. 61-6) issued by the DMV and his

U.S. passport (ECF No. 61-7), both which depict a person who does not look like the person in

the Facebook posts named Manuel Delacruz. (Pl. 56.1., at ¶¶ 18-21)  Plaintiff also submitted

---

[3] The record is exceedingly unclear as to the attribution of the Facebook profiles and pictures.  In paragraphs 7 and 12 of Plaintiff's Counterstatement of Material Facts (ECF No. 57-1), Plaintiff avers that the Facebook profile is not his.  However, in what appears to be a mistake, in Paragraphs 9 and 11, he does not dispute that the same Facebook profile belongs to him. Having reviewed the submissions, the Court can readily see that the man in the Facebook pages is not the same person depicted on Plaintiff's state identification card or medical records. Moreover, the Facebook pages are not authenticated, and it is unclear how defense counsel would authenticate them given that Plaintiff has attested that the person depicted is not him and submitted a picture of himself on a state-issued document that does not match the picture of the person in the Facebook postings.

photographs of himself without his prosthetic eyes (ECF No. 61-1) as well as a declaration from

Doctor Marie Panganiban attesting that Plaintiff is in fact blind.  (ECF No. 57-8, at ¶ 7)

### e.  Plaintiff's Relationship to Bariatric Care and Product Eligibility

Defendants assert – and Plaintiff does not dispute – that Plaintiff has never had bariatric

surgery, is not overweight or obese, has not sought or consulted with Defendants regarding

bariatric surgery, and is not a current, former, or prospective bariatric patient of LIM. (Defs.

56.1, at ¶¶ 17-22)  Defendants contend that their shop products are available only to bariatric

patients and that Plaintiff was not denied access by virtue of his disability, but rather, was

ineligible for LIM's products as a non-patient. (Defs. 56.1, at ¶¶ 17-25, 35-42)

Plaintiff responds that Defendants do not require a prescription or prerequisites to

purchase products online and that Defendants receive substantial income from online sales. (Pl.

56.1, at ¶¶ 15-17) Plaintiff also argues that the nutritional shakes are advertised as healthy

meal replacements that do not require meal preparation – something Plaintiff was interested in

trying. The current version of the website itself does not appear to be limited to patients of

Defendants, advertises the medical practice, and sells a variety of nutritional and cosmetic

products.  www.stopobesityforlife.com (last visited October 27, 2025).

### 2.  Procedural Background

Plaintiff initiated this action on July 24, 2023.  (ECF No. 1)  The Court set a deadline of

January 12, 2024 to amend pleadings and join parties and a date of March 31, 2024 to complete

all discovery.  Plaintiff filed the First Amended Complaint ("FAC") on October 30, 2023, and

Defendants filed an Answer to the FAC on November 28, 2023.  (ECF Nos. 18, 22)  The FAC

alleges that Defendants subjected Plaintiff to discrimination on the basis of his disability by

failing to ensure that their website was fully accessible to blind and/or visually-impaired

persons.  The parties then engaged in discovery.  After the close of discovery, and a day after

the deadline for filing a motion for summary judgment (ECF Nos. 30, 31), Defendants filed what

purported to be four motions:  a motion to dismiss for lack of jurisdiction, a motion to dismiss

the case as frivolous, a motion for summary judgment, and a motion for sanctions.  (ECF Nos.

31-34)  On March 11, 2025 and March 13, 2025, Plaintiff filed letters requesting that the Court

direct Defendants to withdraw their motions and instead resubmit a Motion for Summary

Judgment only.  (ECF Nos. 35, 38)  On March 14, 2025, the Court denied Defendants' request

for oral argument on the Motion for Sanctions and further ordered Defendant's to refile their

Motion for Summary Judgment only.  (ECF No. 40)

On March 18, 2025, Defendants filed a stand-alone Motion for Summary Judgment with

accompanying documents, and on March 19, 2025, Plaintiff filed a letter requesting leave to file

a Cross-Motion for Summary Judgment.  (ECF Nos. 41-43, 45)  Defendants then filed a letter to

the Court requesting leave to file a Motion to Dismiss and requesting an evidentiary hearing

regarding sanctions.  After a conference before the undersigned on March 25, 2025, the Court

entered a Post-Conference Order permitting the Defendants to rely on their earlier motions as

a Motion to Dismiss and/or for Summary Judgment and reinstated the motion. (ECF Nos. 31-34)

The Court then struck the stand-alone Motion for Summary Judgment from the docket, and set

a schedule for Plaintiff's Cross-Motion for Summary Judgment.  (ECF. No. 51)  On May 8, 2025,

Plaintiff filed a Memorandum of Law in Opposition to Defendants' motion and a Cross-Motion

for Summary Judgment.  (ECF No. 57)  Plaintiff filed an accompanying declaration on May 9,

2025.  (ECF No. 58)  Defendants then filed an untimely Opposition and Reply on May 31, 2025,

and Plaintiff a Reply in Support of his Cross-Motion on June 6, 2025.  (ECF Nos. 59-61)

**LEGAL STANDARD**

**1.  Rules 12(b)(1) and 12(b)(6)**

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*

*v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Because "Article III, § 2, of the Constitution

limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" "an actual controversy

must be extant at all stages of review." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71

(2013) (citation omitted).

"A district court must dismiss a complaint for lack of subject matter jurisdiction,

under Rule 12(b)(1) . . . if a plaintiff fails to establish standing to bring the action." *Dominguez v.*

*Athleta LLC*, No. 19 Civ. 10168 (GBD), 2021 WL 918314, at *2 (S.D.N.Y. Mar. 10,

2021) (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416-17 (2d Cir.

2015)).  In resolving a motion to dismiss under Rule 12(b)(1), "the court must take all facts

alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," *Natural*

*Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (internal quotation omitted), but

"jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*,

140 F.3d 129, 131 (2d Cir. 1998) (quoting *Norton v. Larney,* 266 U.S. 511, 515 (1925)); *see also*

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  The Court may rely

on evidence beyond the pleadings when resolving a Rule 12(b)(1) motion.  *Paguda v.*

*Yieldstreet*, No. 20 Civ. 9254 (LGS), 2021 WL 4896278, at *2 (S.D.N.Y. Oct. 20, 2021) (internal citations omitted).  Because standing is not a mere pleading requirement, the Plaintiff must support standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992).  That means that in response to a motion for summary judgment, a plaintiff cannot rest on mere allegations but must provide evidence of specific facts by affidavit or otherwise which can be taken to be true and, if those facts are controverted, they "must be supported adequately by the evidence adduced at trial." *Id*. (internal quotations omitted).

Pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will be facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Indeed, a district court must accept as true all well-pleaded factual allegations in the complaint and draw all inferences in the plaintiff's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  However, that principle "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "A pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"); *Del-Orden v. Bonobos*, No. 17 Civ. 2744 (PAE), 2017 WL 657902, at *4 (S.D.N.Y. Dec. 20, 2017) (quoting *Twombly*, 550 U.S., at 555).

2.  **Rule 56**

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact, and in making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).

To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  To receive consideration, the evidence in the record must be admissible at trial.  *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001).  The non-moving party "cannot rely solely on allegations in [the] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible" to defeat a summary judgment motion.  *Herlihy v. City of New York*, 654 F. App'x 40, 43 (2d Cir. 2016) (quotation marks and citations omitted); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(c)).

Typically, "[o]n cross-motions for summary judgment, the court must consider each motion independently of the other and when evaluating each, the court must consider the facts in the light most favorable to the non-moving party." *Chartis Seguros Mexico, S.A. de C.V. v. HLI 7 Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 179 (S.D.N.Y. 2014). "[E]ven when both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *See Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121

(2d Cir. 2001) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)).  Where

"the motion and cross-motion seek a determination of the same issues, the Court may consider

them together." *ExteNet Sys., Inc. v. Village of Pelham*, 377 F. Supp. 3d 217, 223 (S.D.N.Y. 2019).

In this case, because both parties rely on evidence outside of the pleadings and insofar

as discovery is complete, I evaluate the motions under the Rule 56 standard.[4]

### DISCUSSION

1.  **Plaintiff's Standing**

Defendants argue that Plaintiff does not have standing to bring this action.  Standing is a

threshold issue that must be addressed first.  Article III of the Constitution "confines the federal

judicial power to the resolution of 'Cases' and 'Controversies' in which a plaintiff has a 'personal

stake.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quoting *Raines v. Byrd*, 521 U.S.

811, 819-20 (1997)).  "[T]o establish standing, a plaintiff must show (i) that he suffered an injury

in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely

caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*.

(citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A plaintiff pursuing injunctive

relief, like the ADA plaintiff here, must establish that he "is likely to be harmed again in the

future in a similar way." *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 239 (2d Cir. 2016) (citation

omitted).

---

[4] This Court permitted Defendants to reinstate the motion at ECF 31 as a Motion to Dismiss and/or for Summary Judgment, which is why it is permissible to treat their motion with respect to standing as one under Rule 56 without providing a separate notice. Fed. R. Civ. P. 56(e); *see also New York v. Trump,* 485 F.Supp.3d 422, 445 (S.D.N.Y. 2020*)* (explaining that at the summary judgment stage, a plaintiff can no longer rely on mere allegations but must instead present specific facts – through affidavits or other evidence – that establish standing) (citing *Lujan,* 504 U.S. at 560-61).

"In reviewing standing under the ADA, 'a broad view of constitutional standing' is appropriate because 'private enforcement suits are the primary method of obtaining compliance with the Act.'" *Feltzin v. Clocktower Plaza Props., Ltd*., No. 16 Civ. 4329 (DRH) (AYS), 2018 WL 1221153, at *3 (E.D.N.Y. Mar. 8, 2018) (quoting *Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 199 (S.D.N.Y. 2016)). In the ADA context, the Second Circuit has held "that a plaintiff seeking injunctive relief has suffered an injury in fact when: '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (alteration in original) (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013)). The injury in fact must also be "concrete and particularized, and ... actual or imminent." *Id.* at 187. "These considerations may assist courts in determining whether an alleged prospective injury is sufficiently 'concrete and particularized.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). Standing presents a mixed question of law and fact. *Kreisler*, 731 F.3d 184, at n.3.

Before addressing these three elements, the Court briefly addresses Defendants' contention that Plaintiff is not actually blind and is a sham ADA litigant. Defendants' purported "evidence" that Plaintiff is not blind, is not evidence at all. The Facebook posts they submit are not authenticated and depict a person who does not look like the person in Plaintiff's state-issued i.d. card and passport. Moreover, Defendants never bothered to depose Plaintiff to actually see for themselves what Plaintiff looked like. In sum, no genuine dispute as to

Plaintiff's blindness exists. Plaintiff is blind and has two prosthetic eyes. The Court now turns to standing.

### A. Past Injury

The FAC alleges, and Plaintiff attests, that Plaintiff suffered a past injury under the ADA. Specifically, that he attempted, on several occasions, to access Defendants' Website to purchase Defendants' products, but was unable to use the checkout page or receive certain information about the products because of specific technical barriers described in detail in the FAC and supported by extrinsic evidence. (FAC, at ¶¶ 39, 42; ECF Nos. 57-5–7); *see Camacho v. Vanderbilt Univ.*, No. 18 Civ. 10694 (KPF), 2019 WL 6528974 at *9 (S.D.N.Y. Dec. 4, 2019) (finding standing where plaintiff stated that he could not "utilize the Website's net price calculator because that page was ... incompatible with his screen-reading software"). Plaintiff's assertion is supported beyond the pleadings and invokes more than unsupported conclusory statements. Pertinently, his contention is backed by two audits which report missing navigation landmarks, heading hierarchy defects, hidden elements, inaccessible drop-downs, broken links, missing alt-text, and mouse-only workflows on Defendants' Website.

Defendants, in response, have produced no independent audits of their own and rely exclusively on a document from accessiBe (ECF No. 33-8) to rebut Plaintiff's claim. No one from accessiBe has explained or introduced the document via a declaration or affidavit. Moreover, the document, accessiBe's "Accesibility Statement," is a statement of services that is unsigned, predates key events in this case, and expressly disclaims full accessibility. Most importantly, this document does nothing to contradict Plaintiff's own statements regarding his experience on Defendants' website (i.e., his past injury) – or the findings of the audits Plaintiff introduces

that specify particular aspects of the website that are inaccessible, consistent with Plaintiff's experience.[5]  Thus, the past injury element is met.

### B. Continuation of Discriminatory Treatment

As to the second element, the FAC alleges, and Plaintiff attests, that the barriers he encountered were present each time he visited the Website, showing that the discriminatory conditions are ongoing.  (Pl. 56.1, at ¶ 40)  The Declaration of Michael McCaffrey, which confirms that the same accessibility barriers were still present on the Website as of February 18, 2025, further bolsters the claim that the website's inaccessibility is ongoing. (McCaffrey Decl., at ¶ 7)  Moreover, Defendants' do not purport to have fixed any accessibility issues on the Website, nor do they produce any evidence showing that remedial measures were taken to disprove Plaintiff's allegations that the discriminatory treatment would continue.  *See Norman v. Three in One Equities, LLC,* No. 22 Civ. 3173 (JLR) (JLC), 2024 WL 488181, at *5 (S.D.N.Y. Feb. 8, 2024) (continuing-discrimination element was satisfied where "to date," the defendant "failed to remove the [alleged accessibility] barriers").  Accordingly, Plaintiff has satisfied his burden of showing that it was reasonable to infer that the discriminatory treatment would continue.

### C. Intent to Return

The third element, however, requires far closer scrutiny insofar as Plaintiff alleged few facts in the FAC on this element and, now that discovery has concluded, presents scant

---

[5] Additionally, the Court notes that some courts in this Circuit have expressed doubts about accessiBe's reliability in ensuring accessibility.  *See Velazquez v. Spice & Tea Exch*, No. 22 Civ. 7535 (PGG) (RWL), 2024 WL 3928613, at *7 (S.D.N.Y. Aug. 22, 2024), *report and recommendation adopted* by 2024 WL 4950065, at *1 (Dec. 3, 2024) (collecting cases) (rejecting an accessiBe report as insufficient on mootness because it did not identify the auditor, methodology, or basis for conclusions – leaving website compliance unresolved).

evidence of his intent to return to the website.  When evaluating this element under Rule 12, the Second Circuit has explained that "the central inquiry is not whether a complaint pleads the magic words that a plaintiff intends to return, but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury." *Calcano* 36 F.4th at 75 (internal quotation marks and citation omitted).  Put differently, "it is not enough for a plaintiff merely to recite that he intends to return to the challenged premises if they are made accessible.  Rather, he must present specific facts that 'plausibly establish that [he] intended to return to the subject location.'" *Volfman v. Miss Du's Tea Shop, Inc*., 24 Civ. 2973 (PAE) (BCM), 2025 WL 1852302, at *5 (S.D.N.Y. Apr. 18, 2025) *adopted* 2025 WL 1621628 (S.D.N.Y. June 9, 2025) (quoting *Calcano*, 36 F.4th at 76).  "[I]ntent to return is a highly fact-sensitive inquiry that incorporates a range of factors such as the frequency of the plaintiff's past visits and the proximity of the defendant's services, programs, or activities to the plaintiff's home along with any other factors relevant to the calculation including the plaintiff's occupation or demonstrated travel habits." *Bernstein v. City of New York,* 621 F. App'x 56, 59 (2d Cir. 2015) (citing *Kreisler,* 731 F.3d at 187-88 and *Camarillo v. Carrols Corp.,* 518 F.3d 153, 158 (2d Cir. 2008)) (internal quotation marks omitted); *see also Castillo v. John Gore Org., Inc.,* No. 19 Civ. 388 (ARR) (PK), 2019 WL 6033088, at *6 (E.D.N.Y. Nov. 14, 2019).

Some factors prove more important in some cases than in others.  For example, in *Pincus v. Nat'l R.R. Passenger Corp.*, the Second Circuit, in reviewing an appeal of a Rule 12 dismissal, held that when a plaintiff is "seeking future access not to one of many local restaurants, but to the *only* national railway system," she need not "plead the frequency with which she visited Tampa's Amtrak station, the proximity of her home to the station, or reasons

for future travel" to establish an intent to return. 581 F. App'x 88, 90 (2d Cir. 2014) (emphasis added).  In *Kreisler*, the case advanced to a bench trial at which the Plaintiff succeeded in securing injunctive relief.  On appeal, the Second Circuit found that the plaintiff – who was in a wheelchair and unable to access the defendant's diner due to a step at the front entrance – had proffered sufficient facts to establish standing to challenge the diner's inaccessible entrance. The Circuit further held that the impassable entrance deterred the plaintiff from eating at the diner, which was a cognizable injury under the ADA.  *Kreisler*, 731 F.3d at 188.  The Circuit cited plaintiff's testimony that he "frequent[ed] [other] diners in his neighborhood," "live[d] within several blocks of the [d]iner," "passe[d] by [the diner] three to four times a week," and "would [have] like[d] to frequent the [d]iner if he were able to access it." *Id.* at 186, 188.

By contrast, in *Calcano*, an appeal from a dismissal of a complaint under Rule 12, the Court noted that plaintiffs merely "parrot[ed] the court's language in *Kreisler*," alleging in conclusory fashion that they resided "in close proximity to" the defendants' businesses, had been a "customer at [the defendants' location] on prior occasions," and intended to "immediately purchase at least one store gift card from the [d]efendant as soon as the [d]efendant [sold] store gift cards that [were] accessible to the blind." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (noting that "conclusory invocations of the factors we found relevant in *Kreisler* are insufficient to establish standing" and finding that "[the plaintiffs'] vague assertions that they ha[d] been customers at [the defendants'] businesses 'on prior occasions'" failed to "nudge their claims 'across the line from conceivable to plausible.'") (quoting *Iqbal*, 556 U.S. 662, at 680).  The Court in *Calcano* further noted that the plaintiffs failed to "provide *any* details about their past visits or the frequency of such visits," such as

"which stores they visited," "what items they purchased," or "why they want[ed] to purchase

braille gift cards—for their own use or as gifts—so urgently that they intend[ed] to do so" as

soon as the defendants sold gift cards that were accessible to the blind. *Id.* at 76-77 (emphasis

in original); *see also Dominguez v. Banana Republic, LLC*, 613 F. Supp.3d 759, 766 (S.D.N.Y.

2020) (same); *Delacruz v. Jamba Juice Company*, No. 19 Civ. 10321 (GHW), 2020 WL 3250392,

at *1 (S.D.N.Y. June 16, 2020) (finding same plaintiff as in instant case failed to show intent to

return to Jamba Juice to buy juices with a braille gift card); *Chalas v. Barlean's Organic Oils, LLC*,

No. 22 Civ. 4178 (CM), 2022 WL 17156838, at *2-3 (S.D.N.Y. Nov. 22, 2022) (finding that the

plaintiff had alleged sufficient facts to plausibly infer that she intended to return to the

defendant's website when she identified a specific purpose – "to buy the [product] for her

cousin after hearing that this product in particular could relieve her cousin's issue" – and facts

showing why she wanted to buy from the defendant's website in particular, citing to quality

products that had received awards and the defendant's commitment to "staying ahead of the

innovation curve"); *Maddy v. Life Time, Inc.*, No. 22 Civ. 5007 (LJL), 2023 WL 4364488, at *5

(S.D.N.Y. July 5, 2023) (finding that the plaintiff had sufficiently pleaded an intent to return to

the defendant's website when she claimed that she "collect[ed] body lotions and oils from

various brands ... and [that] the website offer[ed] a specific oil ... that [she] want[ed] to add to

her collection"); *Walters v. Fischer Skis U.S., LLC*, No. 21 Civ. 1115 (LEK) (ATB), 2022 WL

3226352, at *4 (N.D.N.Y. Aug. 10, 2022) ("[I]t is reasonable to infer, based upon [the]

[p]laintiff's history as a skier and his interest in the sport, that he will plan another ski trip and

will return to the site to purchase new equipment"); *cf. Jenisa Angeles v. Grace Prod., Inc.*, 2021

WL 4340427, at *2 (S.D.N.Y. Sept. 23, 2021) (finding standing where, in response to a factual

challenge to jurisdiction, Plaintiff had submitted an affidavit alleging additional facts including her ongoing interest in purchasing beauty products from the defendant's website).

Here, the FAC alleges that Plaintiff visited the website only two times in 2023. (FAC, at ¶ 42) Then, after discovery closed and he was facing a motion for summary judgment, Plaintiff visited the website one more time on April 27, 2025. (ECF 57-2, at ¶ 6) Visiting the website three times in two years is far from the regularity required to demonstrate an intent to return to a website. *Compare Velazquez v. Home Controls, Inc.*, No. 22 Civ. 3921 (MKV), 2023 WL 4622597, at *3 (S.D.N.Y. July 19, 2023) (finding that two visits to a website to buy a product was inadequate to establish an intent to return), *with Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d at 82-83 (S.D.N.Y. 2022) (intent to return was found where the plaintiff alleged multiple dates on which he accessed website, described with specificity the product plaintiff wanted to buy – defendant's "Natural Roasted Almond Dark Chocolate Mini Bars," explained his weekly habit of consuming that type of product, and defined multiple characteristics of defendant's product that attracted him to defendant's website); *see also Davis v. Wild Friends Foods, Inc.,* 22 Civ. 4244 (LJL), 2023 WL 4364465, at *6 (S.D.N.Y. July 5, 2023) (holding that plaintiff's intent to return was properly alleged where the plaintiff visited the website five times within a five month period to buy a unique type of honey butter). Moreover, none of the detail that exists other cases where intent to return was sufficiently established, such as why he wanted the defendant's specific product offered on its website, are present here.

In the FAC, Plaintiff states in a conclusory manner that he "intends to revisit the Website once the accessibility issues have been remedied." (FAC, at ¶ 49). But he states nothing about why he wanted to purchase meal replacements intended for bariatric surgery candidates and

patients.  He admits he is not overweight, never had bariatric surgery, and is not a candidate for bariatric surgery. (ECF 57-1, at ¶¶ 18-19, 37-38)  He also admits he never consulted with Defendants about having bariatric surgery and is not a former or prospective patient of Defendants.  (*Id.*, at ¶¶ 20-22, 36, 39)  Yet, curiously, in the FAC, Plaintiff cites Defendants' statements that their meal replacements are "an easy way to get in all of your post surgery [sic] protein requirements" and that the website is a "one stop for all of the bariatric recipes and foods you need" as part of what enticed him to want to buy a meal replacement shake.  (FAC, at ¶ 43) This does not, however, speak to Plaintiff's future plans.

Neither the FAC nor the declarations submitted by Plaintiff in connection with the instant motions state that Plaintiff had previously purchased and/or consumed meal replacement shakes.  Nor do they say anything about what in particular about Defendants' meal replacement shakes were important to him (as opposed to the plethora of meal replacement shakes available in the marketplace).[6]  The only thing Plaintiff states in his declaration submitted in connection with summary judgment briefing is that, based on Defendants' website, the meal replacement shakes "sounded tasty as well as nutritious," and would "be easy for [him] to use so [he] wouldn't have to cook a meal."  (ECF No. 57-4, at ¶ 8) Yet, he doesn't explain why they sounded tasty or what distinguishes Defendants' shakes, in his estimation, from other meal replacement shakes in the market.

Finally, the Plaintiff – parroting language from *Kreisler* – alleges in the FAC that the close proximity of Defendants' office to the Plaintiff's residence by subway was a factor in the

---

[6] The Court takes judicial notice that meal replacement shakes are ubiquitous in the marketplace, from brands such as Ensure, Boost, Premier Protein, Atkins, Slim Fast, Glucerna, Huel, Kate Farms, and more available at a multitude of brick-and-mortar and online stores.

Plaintiff's choice to purchase these products from the Defendants' website. (FAC, at ¶ 50) Yet, he provides no explanation in the FAC or otherwise why Defendants' physical office has any relevance whatsoever to purchasing items available exclusively on Defendants' website. There are no other facts alleged in the FAC or in Plaintiff's declaration submitted in connection with the instant briefing concerning Plaintiff's intent to return to the website to purchase Defendants' meal replacement shakes.

Fundamentally, Plaintiff's allegations and evidence of his intent to return to Defendants' website are vague, conclusory, and insufficient under Rule 12 and, certainly under Rule 56 to demonstrate standing. *See Wahab v. White's Boots, Inc.,* No. 23 Civ. 9018 (JHR) (GS), 2024 WL 3909083, at *12 (S.D.N.Y. Aug. 14, 2025) (dismissing complaint on Rule 12 motion for failure to sufficiently plead "past injury," and stating it was a close call whether intent to return was established, but ultimately finding intent to return where plaintiff demonstrated that she had previously purchased and used products akin to those that defendant was offering on its website that plaintiff could not access); *Velazquez v. Home Controls, Inc.*, No. 22 Civ. 3921 (MKV), 2023 WL 4622597, at *3 (S.D.N.Y. July 19, 2023) (finding conclusory allegations of intent to return, including just two visits to a website to buy a product, were inadequate to establish an intent to return on Rule 12 motion); *Feliz v. IHealth Labs Inc.*, No. 23 Civ. 354 (JLR), 2024 WL 342701, at *3 (S.D.N.Y. Jan. 20, 2024) (allegations of "still want[ing]" to buy COVID-19 tests and a stated intent to return were insufficient as "boilerplate allegations"); *Loadholt v. Game Goblins, LLC*, No. 22 Civ. 7367 (AT), 2023 WL 6066220, at *3 (S.D.N.Y. Sept. 18, 2023) (finding no standing in part because plaintiff failed to explain "what board games he is interested in,"

whether defendant "is the only retailer who sells" the products at issue, or "why he will return to Defendant" when the accessibility barriers are removed).

Notably, at this stage of the litigation, Plaintiff can no longer rest on "mere allegations" to prove that he suffered an injury-in-fact, and the only evidence submitted on the intent to return element are three sentences in a declaration that says he thought Defendants' shakes "sounded tasty as well as nutritious" and "would also be easy for [him] to use so [he] wouldn't have to cook a meal." This is simply not enough to show standing to obtain injunctive relief under the ADA for future harm under the Second Circuit precedent cited above.

### 2. Plaintiff's NYSHRL and NYCHRL Claims

Plaintiff brought this action asserting that the Court has jurisdiction over the ADA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over the NYSHRL and NYCHRL claims under 28 U.S.C. § 1367. Should the federal claim be dismissed for lack of standing, the remaining issue is whether this Court should adjudicate the remaining state and municipal law claims.

The Supreme Court, has instructed that in the "the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims once all federal claims in a case are dismissed." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988). "Generally speaking, courts decline to exercise supplemental jurisdiction over state-law claims once all federal claims in a case are dismissed." *Lopez v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 9205 (RA), 2019 WL 2647994, at *3 (S.D.N.Y. June 26, 2019).

Insofar as I recommend that the federal claim be dismissed for lack of subject matter

jurisdiction, I also recommend that the Court decline to retain jurisdiction over the remaining

state law claims.  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

### 3.   Request for Hearing on Sanctions[7]

Defendants wish to move for sanctions against Plaintiff on the ground that he is a sham

Plaintiff who is not blind.  They request a hearing on this issue.  For the reasons set forth above,

Plaintiff has already demonstrated through sufficient proof that he is who he purports to be

and is in fact blind.  Thus, there is no need for a motion and no basis to have any hearing on

sanctions.  Accordingly, the request for a hearing on sanctions is DENIED.  *In re Gordon*, 577 B.R.

38, 49 (S.D.N.Y. 2017) (relying on the established record and findings of fact, which were

affirmed on appeal, to deny the request for an evidentiary hearing).

Finally, though Defendants invoke Federal Rule of Civil Procedure 11 in their request,

they have failed to show compliance with the Rule.  Rule 11 requires that a motion for

sanctions "be made separately from any other motion and ... describe the specific conduct that

allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2).  In addition, once the motion is served

under Rule 5, "it must not be filed or be presented to the court if the challenged paper, claim,

defense, contention, or denial is withdrawn or appropriately corrected within 21 days after

service or within another time the court sets." *Id*.  This provision – commonly known as the

"safe harbor" provision – allows the party targeted by a sanctions "the opportunity to withdraw

the potentially offending statements before the sanctions motion is officially filed."  *Storey v.*

*Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir.2003).  A motion that fails to comply with the

---

[7] This issue can be resolved by the undersigned under the Court's General Pretrial Authority.  (ECF No. 44)

safe harbor provision of Rule 11 must be denied. *See, e.g., Bryant v. Britt*, 420 F.3d 161, 163 n. 2

(2d Cir. 2005)  Plaintiffs offer no information whatsoever regarding their compliance with rule's

procedural prerequisites.  Accordingly, there is no basis to entertain any request for sanctions

under Rule 11.

## CONCLUSION

In light of the foregoing, I respectfully recommend that Defendants' motion be

GRANTED because Plaintiff has failed to establish standing.  Considering this recommendation, I

also recommend that Plaintiffs' cross-motion be DENIED as MOOT.  Additionally, Defendants'

request for a hearing on sanctions is DENIED.

Dated: New York, New York
      October 28, 2025                     Respectfully submitted,

                                          _Katharine H. Parker_

                                          KATHARINE H. PARKER
                                          United States Magistrate Judge

**NOTICE**

**Plaintiff shall have seventeen days and Defendants shall have fourteen days from the service of this Report and Recommendation to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).**

**A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P. 72(b)(2). If any party files written objections to this Report and Recommendation, the plaintiff shall have seventeen days to serve and file a response and Defendants shall have fourteen days to serve and file a response. Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); _Thomas v. Arn_, 474 U.S. 140 (1985).**